613 So.2d 259 (1992)
STATE of Louisiana
v.
Michael WILLIAMS.
No. KW 92 0626.
Court of Appeal of Louisiana, First Circuit.
December 23, 1992.
*260 Ralph Tureau, Asst. Dist. Atty., Gonzales, for State.
Gregory Lambert, Gonzales, Phyllis M. Williams, Baton Rouge, Bernard J. Francis, Donaldsonville, for defendant.
Before CARTER and LeBLANC, JJ., and CHIASSON[*], J. Pro Tem.
REMY CHIASSON, Judge Pro Tem.
Michael Williams was charged by a bill of information with possession of cocaine, in violation of La.R.S. 40:967. The defendant pled not guilty. Defense counsel filed a motion to suppress the cocaine seized by the police. A hearing was held on the motion and the trial court denied it. The defendant filed a writ with this court seeking a review of the correctness of that decision. This court granted certiorari.

FACTS
On October 27, 1991, Detective John Schroeder of the Ascension Parish Sheriff's Office received a call on the 911 line from an unidentified caller.[1] The caller described an individual located at the corner of Fourth and St. Vincent Streets in Donaldsonville. The caller thought the individual was buying drugs. He described the individual as a black male wearing a red shirt, black shorts, and riding a yellow bicycle.
Ascension Parish Deputies Rodney Coleman and Dean Werner were sent to the location. When Coleman arrived, he called the defendant to his car and began a casual conversation about a shooting that occurred at a local bar. He did not ask the defendant his name or seek an explanation for his actions. However, Coleman asked the defendant if he would consent to be searched and the defendant refused to consent.
When Werner arrived a minute or two later, the defendant tried to run away. Coleman tackled the defendant and a third deputy put handcuffs on him. The defendant was then placed against the patrol car and patted down. A matchbox containing suspected cocaine was discovered during the search.
Detective Schroeder testified that he sent Coleman and Werner to identify the person on the corner and "see what's going on". He explained that he intended for the officers to see what the defendant was doing because he had been at the corner for the six minutes that the caller was on the line. He agreed that the officers did not have probable cause to "shake down" the defendant, but that anyone hanging around the corner that long was automatically suspect. He believed that the officers had the right to stop and question any person because that individual was free to walk away.
Deputy Werner testified that Deputy Coleman arrived before him. Coleman and the defendant were walking toward the police car. He saw the defendant try to reach into his pants pocket while attempting to run away. He and Deputy Coleman grabbed the defendant and wrestled him to the ground. At that time another deputy arrived and handcuffed the defendant. Werner testified that the defendant was placed against the police car and searched for weapons. At that time the defendant's hand was closed in a fist. The officers asked several times for the defendant to open his fist. Eventually, the defendant handed a matchbox to the officers.
Deputy Werner "guessed" that Deputy Coleman was walking the defendant to the car in order to question him. When asked *261 why the officers pursued the defendant, Deputy Werner testified as follows:
Q And the reason you tackled him grabbed him and threw him to the ground, was because he had tried to run?
A Yes, sir.
Q You felt that he didn't have the right to do that?
A No, sir. He wenthe was going in his pocket and turning nervously trying to run and we didn't know what he was trying to do.
Q Well, if he was trying to run, that meant he was trying to get away from y'all; right?
A Not necessarily.
Q You got the feeling that maybe he wanted to stick around and stay and chat for awhile?
A I got the feeling that he possibly may have had a weapon on him or anything. I didn't know.
Deputy Werner said the defendant was acting nervously, causing the officer to distrust him. The officers then patted down the defendant for safety reasons. They wanted to know what was in the defendant's hand which was handcuffed behind his back.
Deputy Coleman testified that when he arrived, he asked the defendant about a recent shooting at a local bar. Eventually, he asked the defendant if he would consent to a search. Deputy Werner then arrived and the defendant became very nervous and tried to run away. As he was trying to run, he was reaching into his pocket. At that point, both officers were concerned for their safety. Deputy Coleman testified he was fearful because he did not know what the defendant had in his pocket and the defendant was trying to either retrieve or abandon something in his pocket.
Coleman further testified that the defendant was subdued and handcuffed before he was subjected to a brief frisk. During that pat-down search, he felt a small square object in the defendant's left pants pocket. He asked the defendant if he could retrieve the object, but the defendant told him that he could not search it without a warrant. He then put the defendant into the police car. As he was closing the door, the defendant reached into his pocket and retrieved the item. Coleman then took the defendant out of the car and asked the defendant to give him the item. The defendant refused to open his hand even after his mother arrived. Eventually, the defendant surrendered the matchbox which was opened and revealed what appeared to be four rocks of cocaine.
Deputy Coleman said that the defendant did not have anything in his hands when he was wrestled to the ground. During the pat-down search, the only thing that he felt was the matchbox. The defendant had nothing else in his pockets. When asked why the defendant was put into the police car, Deputy Coleman testified he retained the defendant to determine why he was so nervous. He testified the defendant tried to leave and the officers would not let him leave. Coleman also said that they never told the defendant that he was under arrest before he was put into the car.
The defendant testified he initially agreed to talk to Coleman and later decided he wanted to leave. After he tried to leave and was tackled, the officers searched him and they asked him what was in his pocket. When he said there was nothing in his pocket, Deputy Coleman reached in and pulled out the matchbox. The defendant said that when Coleman asked him what the object was, he said he did not know. Deputy Coleman then put the matchbox back into the defendant's pocket, put the defendant into the police car, and told him that he was under arrest. The defendant denied that he put his hands into his pocket any time before he was put into the police car.
In his reasons for judgment, the judge stated that the officers had probable cause to arrest the defendant because this was a crime in progress. The defendant was legally detained because the officers had a right to make a Terry stop.

DENIAL OF THE MOTION TO SUPPRESS

(Assignment of error number 1)
The defendant argues that the actions of the deputies went beyond the scope of a *262 legal stop and frisk to determine if weapons were present. Further, no probable cause existed for the arrest of the defendant, and any evidence illegally obtained must be suppressed.
The state argues that the officers justifiably feared for their safety, that they had a right to detain the defendant to search for a weapon, and after the defendant resisted, they had probable cause to hold the defendant until a search warrant could be obtained. The defendant then gave the matchbox to the officers, thus making the evidence admissible.
The Louisiana and United States Constitutions prohibit unreasonable searches and seizures. La.Const. art. 1, § 5; U.S. Const. Amend. 4. Searches conducted without a warrant are, per se, unreasonable subject only to a few well-delineated exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). However, La.C.Cr.P. art. 215.1[2] and federal and state jurisprudence have recognized the right of law enforcement officers to stop and question someone reasonably suspected of criminal conduct.
The United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), held that the police have the narrow authority to search for weapons when they believe a suspect may be armed and dangerous.
Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. Terry, 88 S.Ct. at 1883. The search must be limited in scope to that which is necessary to discover weapons. Terry, 88 S.Ct. at 1882. This decision was codified in La. C.Cr.P. art. 215.1.
All the witnesses agreed that the encounter began with an attempt by Deputy Coleman to engage the defendant in conversation and find out what he was doing at the corner. The officers were acting solely on the basis of a confidential caller who did not describe any type of drug exchange and could not identify drugs.
The encounter was in an area known for drug trafficking. After the second officer arrived, the defendant tried to leave. At that point in time, the defendant had the right to do so. The issue thus becomes whether, by sticking his hand in his pocket and attempting to withdraw something, the defendant's actions gave the officers reason to believe they were in danger and had the right to make an investigatory search.
In State v. Andrishok, 434 So.2d 389 (La.1983), the Louisiana Supreme Court ruled that a police officer has the right to approach a citizen without probable cause, as long as the citizen retains the right to walk away. This type of approach does not present a Fourth Amendment issue. For any other confrontation, the officer must have a reasonable cause for detention or probable cause for arrest. Andrishok, 434 So.2d at 391.
The basis for an investigatory stop was set forth in State v. Belton, 441 So.2d 1195, 1198 (La.1983) as follows:
We have held that reasonable cause for an investigatory detention is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's *263 right to be free from governmental interference. The right to make an investigatory stop and question the particular individual detained must be based upon reasonable cause to believe that he has been, is, or is about to be engaged in criminal conduct. (Citations omitted)
See also, La.C.Cr.P. art. 215.1.
In the instant case, the state has not met this burden. The defendant's presence in a high crime area, coupled with his attempted flight while reaching into his pocket, did not give the officers legal cause to conduct a search beyond a pat down for weapons. Assuming arguendo that the deputies had the right to detain the defendant when he tried to leave, after the defendant was frisked and no weapon was found, the deputies had no right to further detain the defendant and keep him handcuffed in the police car because they had no probable cause to believe that a crime was committed.
Police officers do not need probable cause to attempt to converse with a citizen. As long as the person remains free to disregard the encounter and walk away, there has been no intrusion upon that person's Fourth Amendment rights. However, when officers make an illegal investigatory stop, property abandoned or otherwise disposed of as a result of that stop cannot be legally seized. State v. Belton, 441 So.2d at 1198-99.
The testimony of the three officers is inconsistent about how the state came into possession of the matchbox. Detective Schroeder testified that Deputy Werner took the matchbox from the defendant and handed it to him. Deputy Werner testified that the defendant handed the box to him after being asked several times. Deputy Coleman testified that the defendant dropped the box on the trunk of the car after being told to release it. Coleman said that Deputy Werner reached down, picked it up, and handed it to Detective Schroeder.
Because the deputies had no warrant, the state had the burden of establishing that the cocaine inside the matchbox was legally seized. The matchbox was obviously not a weapon and does not fall under the exception recognized in La. C.Cr.P. art. 215.1. Any justification under Article 215.1 ended when no weapon was found. The search of the matchbox for a weapon was not authorized or reasonable under the particular facts and circumstances of this case.
It is not necessary to discuss whether the subsequent arrest was legal even though no motion to quash was filed. The arrest was based on the suspected cocaine found in the matchbox during the illegal search.

DECREE
For the foregoing reasons, the writ of certiorari issued herein is made peremptory, the trial court's ruling denying the defendant's motion to suppress is reversed, and the evidence seized as a result of the illegal search is ordered suppressed. This case is remanded to the trial court for further proceedings in accordance with law.
REVERSED AND REMANDED.
NOTES
[*] Judge Remy Chiasson, Retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[1] Detective Schroder insisted on protecting the identity of the caller who was elderly and previously had called in information about possible illegal drug activity. Detective Schroder emphasized that he knew exactly who the caller was, that he was a concerned citizen who was trying to clean up the neighborhood, and that the caller did not know exactly what drugs were involved.
[2] La.C.Cr.P. art. 215.1 provides for the temporary questioning of persons in public places, in pertinent part as follows:

A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.