708 So.2d 1205 (1998)
STATE of Louisiana
v.
Otis BARNEY.
No. 97-KA-777.
Court of Appeal of Louisiana, Fifth Circuit.
February 25, 1998.
*1206 Gregory A. Miller, Norco, for Defendant/Appellant.
Harry J. Morel, Jr., District Attorney, Kurt F. Sins, Assistant District Attorney, Hahnville, for Plaintiff/Appellee.
Before GAUDIN, WICKER and DALEY, JJ.
DALEY, Judge.
Otis Barney appeals his conviction of possession of cocaine, a violation of LSA-R.S. 40:967. On appeal, he assigns as error the trial court's denial of his Motion to Suppress Evidence. We find that the trial court erred in denying his Motion to Suppress. We reverse and remand for further proceedings.
On February 3, 1997, the District Attorney for the Parish of St. Charles filed a Bill of Information charging defendant, Otis Barney, with possession of cocaine, a violation of LSA-R.S. 40:967. He filed a Motion to Suppress the Evidence, which was heard and denied on April 9, 1997. On the same day, Barney pled guilty according to State v. Crosby[1], reserving his right on appeal to raise the trial court's failure to grant his Motion to Suppress. After waiving sentencing delays, he was sentenced to two years in prison, sentence suspended, and two years active probation.

FACTS
The following facts are gleaned from the arresting officer's report and the transcript of the hearing on the Motion to Suppress. The sole witness to testify at the hearing was Officer Farrell of the St. Charles Parish Sheriff's Office.
On January 16, 1997, Officers Farrell and Majors of the St. Charles Parish Sheriff's Office were on patrol in New Sarpy in two separate marked police units. At approximately *1207 2:00 a.m., they observed Barney standing next to a vehicle in the middle of East Harding Street, when the officers approached in the fully marked vehicles. Upon seeing the police units, Barney fled and was eventually apprehended after running several streets away. The officers testified that they observed Barney attempting to reach in the right rear pocket in his jeans. Officer Farrell testified that he hurriedly grabbed Barney's hands and walked him back to the police unit, where he conducted a pat-down search of Barney and also advised him of his Miranda rights. During the pat-down, Officer Farrell felt an object he thought was a matchbox in defendant's right rear jeans pocket. He retrieved the matchbox, opened it, and discovered several pieces of off-white material, which field-tested positive for cocaine.

ASSIGNMENT OF ERROR ONE
In this assignment of error, defendant contends that the trial judge improperly refused to suppress the evidence seized pursuant to the patdown search. Specifically, he argues that Deputy Farrell did not have reasonable suspicion of criminal activity to justify the initial stop, nor did the officer have an articulable belief that he was in danger so as to justify the subsequent frisk. Additionally, defendant contends that the seizure of the matchbox was unjustified because it was immediately apparent to Deputy Farrell that the matchbox was not a weapon and that a matchbox in and of itself is not contraband. The state responds that Deputy Farrell had reasonable cause to stop and pat defendant down. The state also contends that the seizure of the matchbox was justified and relies on this Court's decision in State v. Stevens, 95-501 (La.App. 5 Cir. 3/26/96), 672 So.2d 986.
The issue before us is, initially, whether the investigatory stop and frisk was legal. If so, the next inquiry is whether the patdown search went past permissible bounds.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. However, LSA-C.Cr.P. art. 215.1, as well as state and federal jurisprudence, gives law enforcement officers authority to stop and interrogate individuals reasonably suspected of criminal conduct. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Charles, 95-498 (La.App. 5 Cir. 12/13/95), 666 So.2d 1147.
Reasonable cause for an investigatory stop is something less than probable cause to arrest; it requires that officers have sufficient knowledge of the facts and circumstances to justify an infringement of an individual's right to be free of government interference. State v. Belton, supra; State v. Barnes, 592 So.2d 1352 (La.App. 5 Cir.1991). An unparticularized hunch is insufficient to establish reasonable grounds to stop a person. State v. Jackson, 26,138 (La.App. 2 Cir. 8/17/94), 641 So.2d 1081. The reputation of an area as one of "high crime" is an articuable fact upon which the police officer may rely and is relevant in the determination of whether there is reasonable cause to conduct an investigatory stop. State v. Miskel, 95-584 (La.App. 5 Cir. 1/30/96), 668 So.2d 1299.
Flight, a furtive gesture, nervousness, or startled behavior at the sight of a police officer is not, by itself, sufficient to justify an investigatory stop. However, this type of conduct may be a factor leading to a finding of reasonable suspicion. Further, presence in a high crime area, coupled with nervousness or flight or suspicious actions upon approach of the officers is sufficient to justify an investigatory stop. State v. White, 27,188 (La.App. 2 Cir. 8/23/95), 660 So.2d 515.
Officer Farrell testified that this particular area of New Sarpy was well known as a high crime area in which many narcotics arrests have been made. He testified that he believed a drug deal was "going down", and that after Barney ran, Farrell decided to stop and question him to determine if Barney belonged in the area.
Farrell testified that the car on which Barney was leaning also fled. The officers were unfamiliar with the car. The officers were unable to see the driver, and did not get a *1208 license plate number before or after the vehicle fled. The only behavior Officer Farrell observed was Barney leaning on a vehicle parked in the middle of the roadway, talking to its driver and then departing as the squad cars approached.
Farrell's opinion that this was a high crime area was based upon vague and general statements about the area's reputation. Accepting the officer's opinion that the area was known for crime, coupled with defendant's flight at the approach of the officers, and the officer's experience that such conduct could be indicative of a drug sale, we conclude that under current jurisprudence, the initial investigatory stop was justified.
Next, we must consider whether the officer's frisk of Barney was justified, and whether the scope of that search remained within legal parameters.
In Terry v. Ohio, the Supreme Court stated:
"The sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer."
Terry v. Ohio, 392 U.S. at 29, 88 S.Ct. at 1884. Even after a lawful investigatory stop, a police officer is justified in frisking the subject only under circumstances where a "reasonably prudent man ... would be warranted in the belief that his safety or that of others was in danger." Terry v. Ohio, 392 U.S. at 27, 88 S.Ct. at 1883. Further, the officer's belief is not reasonable unless the officer is "able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." Sibron v. New York, 392 U.S. 40 at 64, 88 S.Ct. 1889 at 1903, 20 L.Ed.2d 917 at 935 (1968). It is not necessary that the investigating officer establish that it was more probable than not that the detained individual was armed and dangerous; it is sufficient that he establish a "substantial possibility" of danger.
The Terry court specifically approved the scope of Officer McFadden's search of Terry. "Officer McFadden confined his search strictly to learn whether the men were armed and to disarm them once he discovered the weapons. He did not conduct a general exploratory search for whatever evidence of criminal activity he might find." Terry v. Ohio, 392 U.S. at 27, 88 S.Ct. at 1884.
In State v. Denis, 96-0956 (La.App. 4 Cir. 3/19/97), 691 So.2d 1295, the court said:
We recognize that the police have the right to ensure their own safety in an encounter with a suspected criminal. Under both our federal and state Constitutions, however, this right must be balanced against an individual citizen's right to be free from unreasonable searches. Although sometimes appearing to be a legal technicality, Article 215.1 B represents the legislature's attempt to maintain that balance by allowing an officer, who has lawfully stopped an individual, to perform a pat-down for weapons, but only if he "reasonably suspects that he is in danger."
* * * * * *
Unless the plain language of Article 215.1 B is interpreted as authorizing an officer to frisk every pedestrian who is stopped pursuant to subsection A, the only way a court can determine if the officer reasonably suspected that he was in danger is to require him to express that suspicion, and explain upon what it is based. Eliminating the requirement for such articulation not only eviscerates this statute, but also opens the door for potential abuse by the rare officer who acts upon personal prejudices rather than actual observation and experience.
In Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the Supreme Court established the "plain feel" doctrine. That Court held that an officer's search of a suspect went beyond the bounds of Terry when the officer continued to explore the suspect's pocket after having concluded it contained no weapon. In Dickerson, police officers stopped people they saw leaving a known crack house. Officer Rose frisked defendant Dickerson for weapons, but found none. However, the officer felt a small *1209 lump in Dickerson's front jacket pocket, which he examined by manipulating it and squeezing with his fingers. After concluding it was a rock of crack cocaine, the officer reached into Dickerson's pocket and seized the rock of cocaine. The trial court upheld the search. The Minnesota Court of Appeals upheld the stop but suppressed the seizure of the cocaine, finding that the search and seizure exceeded the bounds of Terry because the object's character, while known not to be weapon, could not be discovered without further manipulation, rather than by "plain feel." The Minnesota Supreme Court and the United States Supreme Court affirmed.
In State v. Parker, 622 So.2d 791 (La.App. 4 Cir.1993), the Fourth Circuit suppressed cocaine found in a matchbox on defendant's person on the basis that the matchbox was not immediately identifiable as contraband, and thus its seizure from defendant's pocket was not justified under Minnesota v. Dickerson. The Parker court conducted the following analysis:
In Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the Supreme Court stated:
* * * * * *
We have already held that police officers, at least under certain circumstances, may seize contraband detected during the lawful execution of a Terry search ... Under th[e plain view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. (citations omitted) If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the objecti.e., if "its incriminating character [is not] immediately apparent," (citation omitted) the plain-view doctrine cannot justify its seizure. (citation omitted)
* * * * * *
The seizure of an item whose identity is already known occasions no further invasion of privacy. (citations omitted) Accordingly, the suspect's privacy interests are not advanced by a categorical rule barring the seizure of contraband plainly detected through the sense of touch.
* * * * * *
The court concluded:
Although the officer was lawfully in a position to feel the lump in respondent's pocket, because Terry entitled him to place his hands upon respondent's jacket, the court below determined that the incriminating character of the object was not immediately apparent to him. Rather, the officer determined that the item was contraband only after conducting a further search, one not authorized by Terry or by any other exception to the warrant requirement. Because this further search of respondent's pocket was constitutionally invalid, the seizure of the cocaine that followed is likewise unconstitutional.
* * * * * *
Having concluded that a patdown search was justified, the next step in the analysis is to examine whether under Dickerson during the patdown search, did the object whose contour or mass the officer felt make it immediately identifiable as contraband?
In the instant case, the officer did not feel drugs in defendant's pocket, but rather only felt a matchbox. A matchbox in and of itself is not contraband. The Dickerson opinion requires that the felt object feel like contraband and a matchbox is not contraband. In order to determine if the matchbox held drugs, it was necessary for the officer to remove it from inside the defendant's pocket and open it. This is the type of further manipulation outlawed by Dickerson.

For the reasons discussed, the defendant's conviction is reversed and his sentence is vacated.
This court, in State v. Mitchell, 96-999 (La.App. 5 Cir. 3/25/97), 692 So.2d 1251, granted a motion to suppress and ruled that cocaine seized pursuant to a lawful pat down should be suppressed. The officer testified that he knew the object he felt in defendant's *1210 pocket was not a weapon, yet he removed the unknown object from the defendant's pocket and discovered crack cocaine.
In State v. Williams, 613 So.2d 259 (La. App. 1 Cir.1992), police stopped and detained the suspect after receiving an anonymous tip of possible drug trafficking without specific details or description of suspects. Police struck a conversation with Williams at a bar, and he attempted to flee. The officers testified that while attempting to flee, Williams tried to reach around to his pants pocket. Officers wrestled the defendant to the ground and handcuffed him. Defendant removed an item from his pants pocket, which he then held tight in his fist. He ultimately surrendered the object to officers, a matchbox. The matchbox was opened, revealing crack cocaine.
The Williams court identified the issue as whether the defendant's actions, in attempting to flee and sticking his hand in his pocket and attempting to remove something, gave the officers reason to believe they were in danger and had the right to make an investigatory search. That court found:
In the instant case, the state has not met this burden. The defendant's presence in a high crime area, coupled with his attempted flight while reaching into his pocket, did not give the officers legal cause to conduct a search beyond a pat down for weapons. Assuming arguendo that the deputies had the right to detain the defendant when he tried to leave, after the defendant was frisked and no weapon was found, the deputies had no right to further detain the defendant and keep him handcuffed in the police car because they had no probable cause to believe a crime was committed.
Unless the officer has probable cause to arrest the subject, searches of the person beyond the limited scope of Terry are invalid. United States v. Robinson, 414 U.S. 218, 230-35, 94 S.Ct. 467, 474-77, 38 L.Ed.2d 427 (1973); State v. Thornton, 621 So.2d 173 (La.App. 4 Cir.1993).
The above cases are instructive in our analysis of the present situation. Officer Farrell testified that Barney was not under arrest until after he found the cocaine. There was no probable cause for his arrest prior to that finding, so a search incident to an arrest was not justified and in fact did not occur.
Barney's actions consisted of flight and reaching towards his pocket. In Williams, the First Circuit found, under similar factual circumstances, justification for the frisk but not justification for the officers' detention of Williams until he released an object he held tight in his fist. The frisk itself revealed no weapons.
Similarly, in Parker, officers conducted a lawful frisk that revealed no weapons, but a matchbox in a pocket. That court found that a matchbox was neither contraband nor a weapon. The court found that the removal of the matchbox from Parker's pocket and opening it to view its contents was the type of "further manipulation" outlawed by Dickerson.
The State in this case relies on State v. Stevens, 95-501 (La.App. 5 Cir. 3/2/96), 672 So.2d 986. Stevens was observed flagging down vehicles in a high crime area known for drug trafficking. The officers conducted an investigatory stop, and during the pat-down, felt the matchbox in Stevens' pocket. This court, in affirming the denial of Stevens' motion to suppress evidence, relied on lines of cases in which the officer observed the defendants selling drugs from matchboxes or in which the suspect abandoned the matchbox. These cases are not factually similar to the instant one.
Here, Officer Farrell testified that he felt the matchbox in defendant's right rear jeans pocket, and removed it because there was a possibility that sometimes drug dealers carried razor blades in matchboxes to cut the cocaine with. When questioned by defense counsel, Officer Farrell testified as follows:
Q. Was he under arrest at the time you went into his pants pocket?
A. No.
Q. So, at that point, you didn't know whether he committed a crime or not?
A. At that particular time, I performed a pat-down, at which time the matchbox, I felt what appeared to be a matchbox, *1211 and knowing that a razor blade, which can be used as a deadly weapon was in it, I entered the pocket, removed the matchbox, looked inside, and that's when I seen two white rock substance appearing to be crack cocaine.
* * * * * *
Q. But, you didn't know what was in this matchbox?
A. Right, until I looked into it.
Q. But, you thought there was a razor blade in there, right?
A. There's a possibility, yes.
* * * * * *
Under Terry, the officer is permitted to pat down the subject's clothing to detect hidden weapons to protect himself and others from a potentially armed and dangerous suspect. Once an officer determines that a suspect is unarmed, the justification for a Terry search ends. If the true aim of the search is the discovery of anything but weapons, the search cannot be justified under Terry.
In the instant case, Officer Farrell opined that the matchbox could possibly have contained a razor blade. However, once the matchbox left Barney's possession, it and any hypothetical weapon contained inside it ceased to be a threat to the officers' safety. The officer's opening of the matchbox to view its contents exceeded the permissible bounds of the frisk under Terry and Dickerson, because the matchbox itself was not contraband, and any threat of harm to the officers ceased upon Farrell's removal of it from Barney's pocket. This police behavior is exactly the sort of further invasion of privacy specifically prohibited by Dickerson.
In State v. Miskel, supra, this court found that it was reasonable for officers to open a chapstick container that the defendant produced with consent upon the officers' request to empty his pockets. However, that case is distinguishable. First, the suspect consented to empty his pockets. Second, that panel based its conclusion upon State v. Solomon, 93-1199 (La.App. 3 Cir. 3/2/94), 634 So.2d 1330, concluding that the Third Circuit found it reasonable for the police to open a matchbox because it might have contained a small weapon. However, the statement in Solomon was dicta, as Solomon did not challenge the police officers' action in opening the matchbox, but only challenged their right to make the initial investigatory stop.
In State v. Mitchell, 96-999 (La.App. 5 Cir. 3/25/97), 692 So.2d 1251, on appeal this court reversed a trial court ruling and granted defendant's motion to suppress cocaine found in his pocket during a legal investigatory stop. In that case, Officer Majors testified he felt an unidentifiable object that could have been contraband, so he had the right to retrieve it from Mitchell's pocket. This court found that Majors' testimony, that he felt the item was possibly contraband but that he did not know the nature of the substance until after he retrieved it, did not constitute a finding that the incriminating character of the substance was immediately apparent without conducting a further search. This court went on to compare the circumstances to State v. Parker, supra, and suppressed the evidence.
In the instant case, officers did not observe any suspicious behavior by defendant and his companion in the vehicle. The officers observed them talking, but admitted seeing no exchanges between the men, nor the presence of any drug paraphernalia. The officer's search violated the permissible bounds of Terry, Dickerson, and applicable state jurisprudence cited above when he opened the matchbox after removing it from Barney's possession. Once the matchbox was no longer in Barney's possession, any potential threat to the officers' safety was eliminated, and the justification for the limited privacy invasion authorized by Terry and Dickerson evaporated. To uphold the validity of the search of defendant under these circumstances invites the potential for abuse of constitutional rights through the pretense of weapons searches.
Accordingly, though we find that the investigatory stop and initial frisk were legal, we find that the opening of the matchbox by the officer exceeded the permissible bounds of a Terry search under state and federal jurisprudence. We reverse the trial court's denial *1212 of the Motion to Suppress, and remand for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] 338 So.2d 584 (La.1976).