862 So.2d 225 (2003)
STATE of Louisiana
v.
Michael P. COWART.
No. 03-KA-880.
Court of Appeal of Louisiana, Fifth Circuit.
November 25, 2003.
*228 Prentice L. White, Baton Rouge, LA, for Appellant.
Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Appellate Counsel, Juliet Clark, Counsel of Record on Appeal, Bradley Burget, Trial Counsel, Assistant District Attorneys, Gretna, LA, for Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD and JAMES L. CANNELLA.
JAMES L. CANNELLA, Judge.
The Defendant, Michael Cowart, appeals his conviction of possession of hydrocodone and his sentence of seven years imprisonment at hard labor, as a second felony offender. We affirm and remand.
The Defendant was charged on April 12, 2002 with violating La.R.S. 40:967(C), possession of hydrocodone. He pled not guilty and filed a motion to suppress the evidence, which was denied after a hearing. On December 3, 2002, a six-person jury found him guilty as charged. On January 6, 2003, after denying the Defendant's *229 motion for post-verdict judgment of acquittal, the trial judge sentenced the Defendant to five years imprisonment at hard labor. The State subsequently filed a habitual offender bill of information, alleging the Defendant to be a second felony offender. The Defendant responded with objections to the habitual offender bill through counsel and pro se. After a hearing, the trial judge took the matter under advisement. On May 2, 2003, the trial judge found the Defendant to be a second felony offender, vacated his original sentence, and sentenced him to seven years imprisonment at hard labor, without benefit of probation or suspension of sentence. The trial judge ordered the first nine months of the enhanced sentence to be served concurrently with the Defendant's parole violation sentence, and the remaining six years and three months to be served consecutively with the parole violation sentence. The Defendant filed a motion to reconsider the sentence, which was denied.
On March 23, 2002, Deputy Shenandoah Jones of the Jefferson Parish Sheriff's Office was driving south on Carrollton near the intersection of Hyacinth in Jefferson Parish at approximately 2:48 p.m. Deputy Jones observed the Defendant back his car out of a driveway on Hyacinth and drive north on Carrollton. As Deputy Jones passed the Defendant's vehicle, he noticed that the Defendant's inspection sticker was expired, so he turned his car around to pursue the Defendant. When the officer approached the Defendant, the Defendant had already stopped, exited his car and was standing near the rear of the vehicle with his hands cupped at his waist. Deputy Jones asked the Defendant for his driver's license. The Defendant told the Officer that he had no license or identification. According to Deputy Jones, the Defendant was pacing between the car and the curb and held his hands cupped at waist level. Officer James could not see if the Defendant had anything in his hands. Based on these circumstances, Deputy Jones became concerned for his safety and decided to conduct a pat-down search for weapons.
Deputy Jones asked the Defendant to place his hands on the back of the car, but the Defendant refused. Instead, the Defendant pressed his body against the car and kept his hands clenched at his waistband. Deputy Jones repeatedly asked the Defendant to place his hands flat on the car, but the Defendant refused. When the Officer attempted to open the Defendant's hands, the Defendant "bucked back and pushed" him, knocking the Officer backward several steps. As a result, Deputy Jones requested assistance from another police unit. Deputy James continued to attempt to move the Defendant's hands, he noticed an object in one hand that "resembled ... the barrel of a handgun." After another unsuccessful attempt to part the Defendant's hands, Deputy Jones used a "take-down" maneuver to restrain the Defendant until backup arrived.
Deputy Urissa[1] responded to the call. When he arrived on the scene, he and Deputy Jones managed to separate and open the Defendant's hands and discovered that the Defendant had been clenching a pipe. The Defendant was handcuffed, arrested for battery upon a police office, and advised of his rights. Other officers also arrived. Thereafter, Deputy Jones removed the Defendant's wallet to determine his identity. The wallet contained a Louisiana identification card and a white pill stored in one of the plastic dividers. Deputy Jones recognized the scoring on the pill and suspected that the tablet was vicodine. It was later determined that the *230 pill was hydrocodone (vicodine).[2] During the transportation of the Defendant to jail, the Defendant told Deputy Jones that he had obtained the hydrocodone from a friend and that he did not have a prescription for the pill.[3]
On appeal, the Defendant first contends that the trial judge erred in denying his motion to suppress the evidence because the investigatory stop was clearly based solely on an expired inspection sticker that the Deputy could not have seen from ten feet away while driving over twenty miles an hour. Second, the Defendant contends the trial judge erred in denying his motion for a mistrial based on the comments made in closing arguments by the prosecution that referred to his failure to testify. Third, the Defendant asserts that the sentence is illegal because it is awkwardly divided and made both concurrent and consecutive to the time remaining on his sentence for parole violation.
MOTION TO SUPPRESS
The Defendant contends that the trial judge improperly denied his motion to suppress the evidence because the discovery of hydrocodone was the fruit of an illegal investigatory stop and pat down search.
The Fourth Amendment to the United States Constitution and Article 1, Section 5 of the Louisiana Constitution protect individuals from unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate a person reasonably suspected of criminal activity is recognized by state and federal jurisprudence and codified in La.C.Cr.P. art. 215.1. See: Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Robertson, 97-2960, p. 2 (La.10/20/98), 721 So.2d 1268, 1269; State v. Camese, 00-1479, p. 4 (La.App. 5th Cir.4/11/01), 786 So.2d 763, 765. The trial judge's determination on the motion to suppress will not be disturbed on appeal unless it is clearly wrong. State v. Casey, 99-0023, p. 12 (La.1/26/00), 775 So.2d 1022, 1029, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000)
The Defendant asserts that the traffic stop was illegal because it was made without reasonable suspicion of criminal activity and was pre-textual. However, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996);[4]State v. Waters, 00-0356 (La.3/12/01), 780 So.2d 1053, 1056. The standard is purely objective and does not take into account the subjective beliefs or expectations of the detaining officer. Whren, 517 U.S. at 813, 116 S.Ct. at 1774. "Although they may serve, and may often appear intended to serve, as the prelude to the investigation of much more serious offenses, even relatively minor traffic violations provide an objective basis for lawfully *231 detaining the vehicle and its occupants." Waters, 00-356 at 4; 780 So.2d at 1056.
Deputy Jones testified that when he drove past the Defendant's car on March 23, 2002, he observed that the inspection sticker had expired as of December of 2001. A motor vehicle driven upon a highway in Louisiana must have an inspection sticker as provided in La.R.S. 32:53(D), unless it is exempted. Violation of this statute carries a punishment of a fine and potential imprisonment. La.R.S. 32:57.
There is no evidence here that the Defendant's vehicle was exempted from inspection. Therefore, it was required to have an unexpired, official certificate of inspection. Since it did not, Deputy Jones was justified in stopping the vehicle for an expired inspection sticker.
The Defendant also asserts that the stop was illegal because the officer could not have observed that the inspection sticker was expired. However, in denying the motion to suppress, the trial judge believed Deputy Jones's testimony. This Court has stated that the "[c]redibility of witnesses is best determined by the trial judge and is not to be upset on appeal unless the trial judge abuses his or her discretion." State v. Snavely, 99-1223, p. 10 (La.App. 5th Cir.4/12/00), 759 So.2d 950, 957, writ denied, 00-1439 (La.2/16/01), 785 So.2d 840. Nothing in the record indicates that the judge abused her discretion in crediting the testimony of Deputy Jones.
Next, the Defendant argues that the pat down frisk was unlawful. After a traffic stop, an officer may perform a pat down of a driver upon reasonable suspicion that he may be armed and dangerous. Knowles v. Iowa, 525 U.S. 113, 118, 119 S.Ct. 484, 488, 142 L.Ed.2d 492 (1998); La.C.Cr.P. art. 215.1. This limited protective search for weapons is justified under circumstances where a "reasonably prudent man ... would be warranted in the belief that his safety or that of others was in danger." Terry v. Ohio, 392 U.S. at 27, 88 S.Ct. at 1883. It is not necessary for the officer to establish that it was more probable than not that the detained individual was armed and dangerous. Rather, the officer need only establish a `substantial possibility' of danger. State v. Hunter, 375 So.2d 99, 102 (La.1979); State v. Barney, 97-777, p. 6 (La.App. 5th Cir.2/25/98), 708 So.2d 1205, 1208.
In State v. Landry, 588 So.2d 345, 347 (La.1991), the Louisiana Supreme Court recognized there is potential danger for an officer even during a routine traffic stop:
A police officer's stopping a vehicle for a routine traffic violation sets up the possibility of a significant confrontational situation. The motorist may be driving a stolen vehicle, may be transporting contraband, may be in possession of illegal weapons, or may be involved in other criminal activity. The likelihood of danger may also be greater during darkness and in early morning hours, or when there are a number of occupants. A police officer who stops a vehicle for a routine traffic offense may be exposed, according to the circumstances, to a significant risk of attack, and concern for the safety of the officer may be a legitimate and weighty justification for reasonable intrusions into the privacy interests of the occupants of the stopped vehicle.
At the suppression hearing, Deputy Jones testified that he was afraid for his safety because the Defendant was pacing back and forth and clenched his hands tightly. Deputy Jones demonstrated the manner in which the Defendant held his hands for the trial judge. Based on these circumstances and behavior, including that *232 Deputy Jones was alone with the Defendant, who failed to produce a driver's license or identification, we find that the Deputy was justified in conducting the pat down search for weapons.
Even if the pat down were unlawful, suppression of the evidence was not warranted because the Defendant resisted, which led to his arrest for battery upon a police officer. In State v. Sims, 02-2208, 12 (La.6/27/03), 851 So.2d 1039, 1047, the Louisiana Supreme Court held that a person has no right to resist an unlawful pat down search. In Sims, two police officers stopped the defendant who was walking along the street because they suspected that he was a curfew violator. The officers discovered that the defendant was not a juvenile after he produced his identification. However, one of the officers decided to perform a pat down search because the defendant looked nervous. During the pat down, the defendant hit the officer with his elbow and was arrested for battery upon a police officer. A search incident to arrest revealed several rocks of cocaine in the defendant's pocket. The Sims court concluded that the pat down was unlawful because there was no reasonable suspicion of danger to justify the pat down, but found that the defendant had no right to resist the unlawful search. Further, the Sims court held that the cocaine was admissible because it was recovered in a search incident to a lawful arrest for battery upon a police officer.
In this case, the Defendant committed a battery upon a police officer during the pat down search, and the hydrocodone was discovered in a search incident to the Defendant's arrest. Accordingly, we find that the trial judge did not err in denying the Defendant's motion to suppress.
MOTION FOR MISTRIAL
The Defendant contends that the trial court erred when it denied a motion for mistrial after the prosecutor referred in rebuttal argument to the Defendant's failure to take the stand. The Defendant contends that the mistrial was mandated since the trial judge conceded on the record that the prosecution tainted the jury's perception of the Defendant by indicating that the Defendant had something to hide when he failed to present any evidence on his behalf. The State responds that the trial judge properly denied the Defendant's motion for mistrial because the remark was in response to the Defendant's closing argument and did not directly or indirectly refer to the Defendant's failure to testify.
The Defendant did not testify on his own behalf at trial and the defense presented no evidence. In closing argument, the Defendant argued that the jury should find the Defendant not guilty because the State did not present the testimony of the other officers who responded to the scene, and that Deputy Jones' testimony was not credible because he did not seize the Defendant's wallet or identification card. Additionally, the Defendant pointed out that he did not attempt to flee the scene after the traffic stop. During the State's rebuttal argument, the prosecutor made the following remarks that preceded the Defendant's objection:
Why didn't he flee? It would've made sense. No. I can't explain it to you. I can't explain why somebody's going to have prescription drugs just for fun. Why? Because I don't do that, `cause it's against the law, because it can kill you. If you take too much, you could die. I can't explain to you why he did what he did on March 23rd, plain and simple. The uncontradicted evidence is that he pulled him over.
In response to the Defendant's motion for a mistrial on the basis that these remarks *233 constituted a reference to the failure of the defendant to testify in his own defense, the trial judge responded, "Yeah. Be careful," but she denied the motion.
La.C.Cr.P. art. 770(3) provides that a mistrial shall be ordered when the prosecutor makes a remark or comment during the trial or in argument, within the hearing of the jury, that refers directly or indirectly to the failure of the defendant to testify in his own defense. Even without this statutory prohibition, a prosecutor is not free to comment upon a defendant's failure to take the stand, since such a comment violates the Self-Incrimination Clause of the Fifth Amendment made applicable to the states through the Fourteenth Amendment. See: Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) and State v. Fullilove, 389 So.2d 1282, 1283-1284 (La.1980). See also: State v. Mitchell, 00-p, p.4 (La.2/21/01) 779 So.2d 698, 701. This prohibition applies to both direct and indirect references to the defendant's failure to testify. Mitchell, 00-1399 at 5, 779 So.2d at 701; State v. Pendelton, 00-1211, p. 6 (La.App. 5th Cir.3/14/01), 783 So.2d 459, 464.
In Mitchell, the prosecutor stated during rebuttal argument, "Where's the weapon? One person knows where the weapon is. One person." Mitchell, 00-1339 at 2,779 at 700. In analyzing whether the statement required a mistrial, the court stated:
"When the prosecutor makes a direct reference to the defendant's failure to take the stand, a mistrial should be declared, and `it is irrelevant whether the prosecutor intended for the jury to draw unfavorable inferences from defendant's silence.'" When the reference to the defendant's failure to take the stand is not direct, this Court will inquire into the remark's "intended effect on the jury" in order to distinguish indirect references to the defendant's failure to testify (which are impermissible) from statements that are not (which are permissible, though not favored). In order to support the granting of a mistrial, the inference must be plain that the remark was intended to focus the jury's attention on the defendant's not testifying.

There are indirect references which focus on, or are intended to focus on a defendant's failure to testify. One such instance is when the defendant is the only witness who can rebut the state's evidence. Such a reference to the testimony as uncontroverted focuses the jury's attention on the defendant's failure to testify and warrants a mistrial. Then, there are and can be indirect references which are not intended to focus on a defendant's not testifying. One such frequently seen instance is a prosecutor's emphasizing that the State's evidence is unrebutted in a situation where there are witnesses other than the defendant who could testify on behalf of the defense, but have not. Also "[s]tatements in argument to the effect that there is no refuting evidence does not constitute an impermissible reference to the defendant's failure to testify." [Citations omitted; emphasis added]
Mitchell, 00-1399 at 4-5, 779 So.2d at 701.
In the earlier case of State v. Fullilove, the court found that the mistrial should have been granted because the prosecutor's comment was a direct reference to the defendant's failure to testify. There, the defense made references to the failure of the state to produce the clothing of the defendant in order to cast doubt on the identity of the defendant as the perpetrator. The prosecutor responded:
"... That is why the evidence was not introduced. The State's case is clear *234 and simple. I really cannot add any more. The only thing that I would like to tell you is that at every phase of these proceedings, this man has been afforded his constitutional right. He has been afforded the right not to take the stand. He has been afforded the right that he has an attorney appointed for him if he can't afford one. His constitutional rights" [Emphasis added]
State v. Fullilove, 389 So.2d at 1283.
In State v. Johnson, 541 So.2d 818 (La. 1989), the State produced three witnesses who testified that the defendant confessed to the crime. In closing argument, the prosecutor stated:
I will submit to you that there can be no better evidence in a criminal proceeding but that evidence from the defendant's own mouth, not contradicted by anybody. Nobody came here and contradicted anything that was attributed to him, not one single person. Nobody took the stand. [Emphasis added]
Johnson, 541 So.2d at 822
In Johnson, "the challenged statements of the prosecutor focused on the absence of testimony in rebuttal to the testimony of those state witnesses who said that the defendant told them that he committed the crimes." Johnson, 541 So.2d at 823. No one else witnessed the alleged confessions. Thus, the court held that the mistrial should have been granted.
In Pendleton, however, this Court found that the comments were permissible. There, the prosecutor stated:
She was a little shaky. She was a little upset. She is a victim of a robbery. She had to come into a courtroom and testify. But she was clear in one critical regard: That that's the man that robbed me back on June 17th. No evidence presented to contradict that. And, of course, what I say[Emphasis added].
Pendleton, 00-1211 at 6, 783 at 463.
This Court found that the record supported the conclusion that the prosecutor's comment was "a permissible general comment on the strength of the State's unrebutted evidence [the victim's testimony], rather than an impermissible reference intended to draw the jury's attention to the defendant's failure to testify." Pendleton, 00-1211 at 7, 783 at 464.[5]
We find that the comment in this case is similar to the one in Pendleton as it was "a permissible general comment on the strength of the State's unrebutted evidence." Pendleton, 00-1211 at 7, 783 at 464. It was not a reference intended to draw the jury's attention to the Defendant's failure to testify. Thus, the trial judge did not err in denying the motion for mistrial.
ILLEGAL/EXCESSIVE SENTENCE
The Defendant asserts that the sentence was illegal because the trial judge awkwardly divided it and made it both concurrent and consecutive with the Defendant's remaining time under his parole, and that his enhanced sentence of seven years is excessive.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739, 751 (La.1992); State v. Williams, 98-1146, *235 p. 21 (La.App. 5th Cir.6/1/99), 738 So.2d 640, 655, writ denied, 99-1984 (La.1/7/00), 752 So.2d 176. However, La.C.Cr.P. art. 881.4(D) provides that the court of appeal "shall not" set a sentence aside on grounds of excessiveness if the record supports the sentence imposed. See: State v. Richmond, 98-1015, p. 8 (La.App. 5th Cir.3/10/99), 734 So.2d 33, 38.
As a second felony offender, the Defendant was subject to a sentence of not less than one-half of the maximum sentence of the underlying offense and not more than twice the maximum sentence of the underlying offense. La.R.S. 15:529.1(A)(1)(a). The underlying offense of possession of hydrocodone is punishable by a term of imprisonment of not more than five years. La.R.S. 40:967(C)(2). Thus, the sentencing range in this case was between 2½ years to 10 years of imprisonment.
The Defendant contends first that he received the maximum sentence. However, that is not reflected in the record. He received seven years out of a possible ten year sentence. Although the trial judge did not detail the factors considered when imposing sentence, the trial judge's remarks indicate that she was familiar with the circumstances surrounding the Defendant's case. She was aware of the Defendant's age and, at the original sentencing, the trial judge stated that she was aware of the Defendant's "past history." In denying the Defendant's motion to reconsider the original sentence, the judge stated that she that she felt "pretty strongly about this one."
Prior criminal activity is one of the factors to be considered by the trial judge in sentencing a defendant. State v. Washington, 414 So.2d 313, 315 (La.1982); State v. McCorkle, 97-966, p. 15 (La.App. 5th Cir.2/25/98), 708 So.2d 1212, 1219. The Defendant here was twenty-six years old when he was sentenced and had pled guilty[6] three years before to simple robbery.
In State v. Joseph, 99-1161, p. 6 (La.App. 5th Cir.3/22/00), 759 So.2d 141, 144, this Court held that the defendant's eight year sentence was not excessive as a second felony offender, where the underlying offense was possession of cocaine.[7] Furthermore, the issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Thomas, 98-1144, pp. 1-2 (La.10/9/98), 719 So.2d 49, 50. In this case, we find that the Defendant's seven year sentence as a second felony offender is not excessive.
The Defendant also asserts that the sentence was "awkward and distorted" because the trial judge made part of the sentence consecutive and part of the sentence concurrent with the sentence on the parole violation. At sentencing, the trial judge stated that part of the seven years would be served concurrently and part would be served consecutively to the parole violation sentence:
THE COURT:
[A]nd on the parole violation, in connection with the sentence that I gave you of seven years in # 02-2090, I am going to makeit's my understanding that you've gotlet me think how I'm going to do this ... I'm going to make one half ofI'm going to run the seven years that I have just given you one-half concurrently with what the [sic] time you have left on your parole and one-half *236 consecutively to what you have left on your parole, and it's my understanding from your attorney it's about a year and a half. Okay. Soif that's it, and I'm not saying it is, it will be about nine months concurrently, nine months consecutively. All right. Good luck sir.
After the Defendant's attorney questioned the judge about the sentence, the judge clarified that the first nine months of the sentence would be served concurrently with the Defendant's parole violation sentence and that six years and three months would be served consecutively to the parole violation sentence.
Although not clearly articulated, it seems that the thrust of the Defendant's argument is that the sentence is indeterminate. La.C.Cr.P. art. 879 requires a sentence to be determinate for each offense upon which he is convicted. See: State v. Fish, 00-922, pp. 9-10 (La.App. 5th Cir.1/30/01), 782 So.2d 1087, 1092, writ denied, 01-0548 (La.2/1/02), 808 So.2d 337.
The record reflects that the trial judge stated that the first nine months of the sentence is concurrent to the Defendant's parole violation sentence and that the remaining six years and three months will be consecutive to the parole violation sentence. It is noted that a person who commits a felony while on parole is subject to revocation as of the date of the commission of the felony and the new sentence is to be served consecutively with the parole violation sentence, unless the court expressly directs the sentence is to be served concurrently. See, La.R.S. 15:574.10. Accordingly, the trial court had the authority to order the sentence to be served consecutively or concurrently.
Further, a "split" sentence has been held to be permissible. In State v. Johnson, 450 So.2d 48 (La.App. 3rd Cir. 1984), the court found that La.C.Cr.P. art. 883 permitted the trial judge to order that a portion of a sentence be served concurrently and the remainder consecutively with another sentence. See also: State v. Hayes, 602 So.2d 285, 287 (La.App. 2nd Cir.1992). Thus, we find no abuse of the trial judge's discretion in ordering a portion of the enhanced sentence to be served concurrently and the remainder to be served consecutively with the Defendant's parole violation sentence.
PATENT ERROR
The record was reviewed for patent errors, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Perrilloux, 99-1314 (La.App. 5th Cir.5/17/00), 762 So.2d 198. We find two patent errors.
The sentencing transcripts show that the trial judge did not advise the Defendant of the two-year prescriptive period for applying for post-conviction relief pursuant to La.C.Cr.P. art. 930.8. Thus, we remand the case with an order for the trial judge to send written notice within 10 days of the rendering of this opinion informing the Defendant that he has two years from the date the conviction and sentence become final to file his application for post-conviction relief, then to file written proof in the record that the Defendant received the notice.
There is a discrepancy between the transcript of the habitual offender sentencing hearing and the corresponding commitment. The transcript reflects that the trial judge stated that the first nine months of the habitual offender sentence is to be served concurrently with the Defendant's parole violation sentence and the remaining six years and three months were to be served consecutively with the parole violation sentence. The commitment states that "[w]hat is left on parole Violation [sic]½ is [sic] run concurrent *237 and ½ is to run consecutive." (R., pp. 73, 227-228). It is further noted that the transcript of December 3, 2003 reflects that the trial court denied the Defendant's motion to suppress after a hearing, while the minute entry does not so reflect.
Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983); State v. Pugh, 02-171 (La.App. 5th Cir.10/16/02), 831 So.2d 341, 354. We will therefore, order the trial judge to correct the commitment to reflect the manner in which the trial judge ordered the habitual offender sentence to be served, and to correct the minute entry relative to the hearing on the motion to suppress the evidence.
Accordingly, the conviction and enhanced sentence are hereby affirmed. The case is remanded and the trial judge ordered to send to the Defendant written notice within 10 days from the rendering of this opinion, informing the Defendant that he has two years from the date the conviction and sentence become final to file his application for post-conviction relief, then to file written proof in the record that the Defendant received the notice. We also order the trial judge to correct the commitment to reflect the manner in which the trial judge ordered the habitual offender sentence to be served and to correct the minute entry relative to the denial of the motion to suppress.
AFFIRMED AND REMANDED.
NOTES
[1] The Deputy's first name is not in the record.
[2] The defense and the State stipulated that the State's expert forensic chemist would testify that the tablet tested positive for hydrocodone.
[3] The Defendant was also charged with battery on a police officer and possession of marijuana, which was found in the car following a search for insurance papers. According to the testimony in the hearing on the motion to suppress the evidence and statements, the marijuana was in plain view and found by the Deputy in and under the ashtray. This information was withheld from the jury at the trial on the hydrocodone possession. He later pled guilty to those charges.
[4] Reaffirmed in Arkansas v. Sullivan, 532 U.S. 769, 121 S.Ct. 1876, 1878, 149 L.Ed.2d 994 (2001).
[5] In Pendleton, we further noted that the defense theory in this case was misidentification and that, as part of its burden of proof, the State was required to demonstrate beyond a reasonable doubt that the defendant was the perpetrator of the offense.
[6] He pled guilty on April 27, 1998
[7] Possession of cocaine has the same penalty provision as possession of hydrocodone. See, La.R.S. 40:967(C)(2).