692 So.2d 1251 (1997)
STATE of Louisiana
v.
Larry MITCHELL.
No. 96-KA-999.
Court of Appeal of Louisiana, Fifth Circuit.
March 25, 1997.
Harry J. Morel, Jr., District Attorney, Louis G. Authement, Assistant District Attorney, Hahnville, for Plaintiff/Appellee State of Louisiana.
Robert A. Chaisson, Destrehan, for Defendant/Appellant.
Before BOWES, WICKER and DALEY, JJ.
WICKER, Judge.
Larry Mitchell was charged by bill of information with possession of cocaine in violation of La.R.S. 40:967. The trial court conducted a preliminary examination and found that there was probable cause to charge him with the offense. The defendant filed a motion to suppress the evidence. After conducting a hearing on the defendant's motion to suppress the evidence, the trial court denied the motion. Mitchell entered a plea of guilty as charged while reserving the right to appeal the denial of the motion to suppress evidence pursuant to State v. Crosby, 338 So.2d 584 (La.1976). In accordance with the terms of the plea agreement, the trial court *1252 then sentenced the defendant to three years to the Department of Corrections, suspended the sentence and placed the defendant on two years active probation subject to various conditions.[1] Mitchell now appeals the denial of his motion to suppress. We reverse and remand.
At the hearing on the motion to suppress the evidence, Officers Terrence Majors (Majors) and Johnny Farrell (Farrell) of the St. Charles Parish Sheriff's Office testified. Additionally, the proceeding was left open to allow the introduction of the police report of the incident. That document was introduced into evidence as a joint exhibit. The state stipulated that Majors stated in his report that he saw Mitchell putting a beer can on the floorboard. The state expressly refrained from stipulating that Majors actually saw Mitchell doing so.
The testimony at trial established the following.
On the night of October 13, 1996, both Majors and Farrell observed a vehicle "run" a stop sign at the intersection of Louisiana Highway 52 and Bailey Street. Majors stopped the vehicle and Farrell subsequently joined him at the scene. The vehicle was occupied by two females and one male. One female was the driver and the second female was seated in the rear seat. The third occupant was the defendant, who was seated in the front passenger seat.
Majors instructed the driver to exit the vehicle with her driver's license and the vehicle's registration and proof of insurance. Upon exiting the vehicle, the driver advised Majors that the registration and proof of insurance were located in the glove compartment. Majors, who had now been joined by Farrell, asked Farrell to retrieve the documents from the glove compartment. As Farrell approached the passenger side of the vehicle, the defendant began acting in a nervous manner. He gave the appearance of placing something under his seat. The officers removed the defendant from the vehicle. Majors conducted a pat-down search of the defendant while Farrell searched the area under the seat in order to check for any weapons. However, Farrell did not find any weapons.
During his pat-down search of the defendant, Majors felt an object approximately ¼ of an inch in diameter in Mitchell's pocket. Majors then removed three rocks of crack cocaine from the defendant's pocket.
The defendant assigns as error the trial judge's denial of his motion to suppress the evidence. He argues that the officers were aware the defendant was placing a beer can under the seat, as noted on the report. He therefore suggests that because of their awareness there was no need to search the defendant for weapons or to infer that he was armed and dangerous.
In State v. Keller, 403 So.2d 693, 697 (La. 1981) the Louisiana Supreme Court followed its earlier holding in State v. Hunter, 375 So.2d 99, 102 (La.1979) wherein it held:
While it is true that an officer is never justified in conducting a pat-down for weapons unless the original detention itself was justified, a lawful detention for questioning does not necessarily give the officer the authority to conduct a pat-down for weapons. Even after a lawful investigatory stop, a police officer is justified in frisking the subject only under circumstances where a "reasonably prudent man... would be warranted in the belief that his safety or that of others was in danger." Terry v. Ohio, 392 U.S. [1] at 27, 88 S.Ct. [1868] at 1883, 20 L.Ed.2d [889] at 909 [(1968) ]. Further, the officer's belief is not reasonable unless the officer is "able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." Sibron v. New York, 392 U.S. [40] at 64, 88 S.Ct. [1889] at 1903, 20 L.Ed.2d [917] at 935 [(1968) ]. It is not necessary that the investigating officer establish that it was more probable than not that the detained individual was armed and dangerous; it is sufficient that he establish a "substantial possibility" of danger. See Comment, *1253 Terry Revisited: Critical Update on Recent Stop-and-Frisk Developments, 1977 Wis.L.Rev. 877, 896 [emphasis added].
The testimony at trial established there was a "substantial possibility of danger." State v. Hunter, supra.
The report states in pertinent part:
Office Farrell advised the right passenger to get the registration and proof of insurance, at which time the passenger became very nervous, looking around as he proceeded to place a beer can (Budweiser) under the seat.
The testimony at the hearing clearly establishes that the knowledge of what the defendant had placed under the seat was not apparent to the officers until after the search of the area.
Majors testified that after he asked Farrell to retrieve the documents from the glove compartment, he noticed the defendant. He explained that Mitchell:
became very nervous and he appeared to be placing something under the seat as Officer Farrell approached the vehicle, might have been a weapon, we didn't know at that time. [emphasis added].
Majors further described Mitchell's actions as follows:
Nervous, looking around and he appeared to be placing something under the seat as though that he was trying to hide something. At which time it kind of alerts me as being an officer that the subject might be placing a weapon or something of that sort under the seat ... [He was looking around] kind of like jumpy like, as though something is about to happen.... [He was not casually looking around. He was jumpy,] he kept kind of looking around, kind of shrugging his shoulders [emphasis added].
Farrell's testimony was consistent with Majors. Majors stated:
Upon walking up to the passenger side, I observed Mr. Mitchell attempting to or appearing to attempt to put something under the seat. At which time, I advised Deputy Majors. We then asked Mr. Mitchell to exit the vehicle, and the [sic] he performed a pat-down ... He moved around in his seat ... appearing to be nervous, and when he leaned as if he was putting something under the seat, I advised Officer Majors due to the fact that they had three subjects in the vehicle. I advised him and then we removed Mr. Mitchell, and then therefore I went and looked under the seat for any weapons.
Farrell explained that Mitchell was looking around "like maybe he wanted to [do] something." He admitted that most individuals do not sit perfectly still when they are stopped for a traffic violation. However, he further explained that as an officer he is concerned for safety and the possibility of weapons:
because due to the fact that we work high crime and projects areas. So, we are always in the midst of things. We know things that are happening on the street. So, for our protection, we do a lot of pat-downs.
Majors stated he then asked Mitchell to step out of the vehicle so that the officers could check for the possibility of weapons placed under the seat. Majors performed a pat-down for weapons because he was concerned for his safety. Farrell also expressed safety concerns since there were three suspects in the vehicle.
In the instant case the officers were "able to point to particular facts from which [they] reasonably inferred that the [defendant] was armed and dangerous." Hunter, supra.
Appellant also argues that "the scope of the search was unreasonable in that the small object which Officer Majors felt in the defendant's pocket clearly could not be a weapon ... and the officer did not articulate any other factors which led him to believe that the object was contraband." We agree.
The state argues the seizure of the cocaine was warranted under the "plain feel" doctrine as stated in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). In Dickerson, supra the court ruled:
We have already held that police officers, at least under certain circumstances, may seize contraband detected during the lawful execution of a Terry search.... Under [the plain view] doctrine, if police *1254 are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. See Horton v. California, 496 U.S. 128, 136-137, 110 S.Ct. 2301, 2307-2308, 110 L.Ed.2d 112 (1990); Texas v. Brown, 460 U.S. 730, 739, 103 S.Ct. 1535, 1541-1542, 75 L.Ed.2d 502 (1983) (plurality opinion). If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the objecti.e. if "its incriminating character [is not] `immediately apparent,' "Horton, supra, at 136, 110 S.Ct. at 2308the plain view doctrine cannot justify its seizure. Arizona v. Hicks, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987).
We think that this doctrine has an obvious application by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search. The rationale of the plain view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no "search" within the meaning of the Fourth Amendmentor at least no search independent of the initial intrusion that gave the officers their vantage point.... The same can be said of tactile discoveries of contraband. If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context. [emphasis added; footnote omitted]
Minnesota v. Dickerson, 508 U.S. at 375, 113 S.Ct. at 2136-2137.
Majors testified as follows:
Upon patting the subject down I felt what appeared to be a round-shaped object, possibly contraband on the subject and at which time I went into the subject's pocket and retrieved what appeared to be three, rock-like substances.
* * * * * *
it had a nice size to it and what appeared to be maybe a contraband or something. Not only a weapon, but contraband, and that gave me, you know, to go into his pocket and retrieve whatever that item was, and it was a white, rock-like substance.
He also testified that he knew when he patted Mitchell down the object was not a weapon but that it could be contraband. The following colloquy occurred:
Q. Could it also be something that was not contraband?
A. It could have been.
Q. Aspirin?
A. Could have been.
Q. Candy.
A. It could have been. But when I went in there and retrieved what it was, it was an off-white rock-like substance that I know was not candy.
Q. After you retrieved it?
A. Correct.
Majors' testimony that he felt the item was possibly contraband but that he did not know the nature of the substance until after he retrieved it does not constitute finding that the incriminating character of the substance was immediately apparent without conducting a further search.
The instant case is similar to the case of State v. Parker, 622 So.2d 791 (La.App. 4th Cir.1993), writ denied, 627 So.2d 660 (La. 1993), where the court found that the seizure of a matchbox during a pat-down search was not justified under Dickerson, supra because the officer could not immediately determine that the matchbox contained contraband without removal of the matchbox.
Accordingly, for the reasons stated the ruling of the trial court is reversed. Defendants' motion to suppress is granted. The plea, conviction, and sentence are vacated and set aside. The case is remanded to the trial court for further proceedings.
*1255 REVERSED AND RENDERED; MOTION TO SUPPRESS GRANTED; PLEA, CONVICTION AND SENTENCE VACATED AND SET ASIDE; CASE REMANDED.
NOTES
[1] As special conditions of the defendant's probation, the trial court ordered the defendant: 1) to undergo substance abuse treatment and evaluation until discharged by the Director of the program; 2) to pay $300.00 fine plus court costs, and 3) to pay a $20.00 monthly probationary fee.