740 So.2d 227 (1999)
STATE of Louisiana
v.
Cory DUCKETT.
No. 99-KA-314.
Court of Appeal of Louisiana, Fifth Circuit.
July 27, 1999.
*228 Paul D. Connick, Jr. District Attorney, Terry M. Boudreaux, Allison Wallis, Frank Brindisi, Assistant District Attorneys, Gretna, Louisiana, Attorneys for Plaintiff/Appellee.
Bruce G. Whittaker, Louisiana Appellate Project, Gretna, Louisiana, Attorney for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, Jr. and SOL GOTHARD and ROBERT L. LOBRANO, J. Pro Tem.
GOTHARD, Judge.
In this criminal appeal defendant, Cory Duckett, appeals his conviction and sentence on drug charges. The record shows that on April 18, 1997, the Jefferson Parish District Attorney filed a two-count bill of information against defendant, charging possession of marijuana with intent to distribute, a violation of LSA-R.S. 40:966 A, and possession of cocaine with intent to distribute, a violation of LSA-R.S. 40:967 A. Defendant was arraigned on October 9, 1997, and pled not guilty to both charges.
Defendant filed various pre-trial motions, including a motion to suppress the evidence, which was denied on August 17, 1998, after the parties submitted the matter on the police report. On the same day, defendant withdrew his pleas of not guilty, and entered guilty pleas pursuant to a plea bargain, reserving his right to appeal the denial of the motion to suppress pursuant to State v. Crosby, 338 So.2d 584 (La. 1976). As part of the agreement, the *229 State reduced count 1 of the bill of information to simple possession of marijuana, a misdemeanor. LSA-R.S. 40:966 C. Count 2 was reduced to possession of cocaine.[1] LSA-R.S. 40:967 C. It was understood that the State would file an habitual offender bill of information.
On August 17, 1998, the trial court sentenced defendant to agreed upon terms of six months in parish prison on count 1, and two years at hard labor on count 2, to run concurrently. Subsequently, the State filed an habitual offender bill, which alleged that defendant is a second felony offender. Pursuant to the plea bargain, defendant admitted to the allegations in the habitual offender bill. The trial court vacated the sentence on count 2, and imposed an enhanced sentence of two and one-half years, as previously agreed upon.
Defendant filed a motion for appeal on August 20, 1998. The motion was timely as to defendant's original sentence, but was premature as to defendant's enhanced sentence. However, this procedural defect was cured by the subsequent re-sentencing. See, State v. Strickland, 97-1265 (La. App. 5 Cir. 7/28/98), 716 So.2d 457, writ denied, 98-2779 (La.3/26/99), 739 So.2d 784.
Given that defendant's convictions were obtained by way of guilty pleas, the only factual background in the record is contained in the police report, entered as State's Exhibit 1 at the motion to suppress proceeding. According to the report, Jefferson Parish narcotics officers responded to information from "concerned citizens" that there was a group of people selling and smoking narcotics on the corner of Deanna Street and Betty Street in Marrero. The officers, wearing police raid jackets, arrived in that area at 7:40 p.m. on April 7, 1997.
The officers saw several black men, including defendant, Cory Duckett, loitering in the area. As the officers approached, defendant fled toward a nearby house. The officers retrieved defendant and brought him to a police vehicle. They advised defendant of his Miranda rights, and conducted a pat-down search of his person for weapons. The officers found a plastic sandwich bag containing eight smaller packages of white powder and four clear plastic bags with green vegetable matter. Field tests on these substances were positive for cocaine and marijuana.
The trial court denied the motion to suppress the evidence, giving the following reasons:
This case involves the right of the police officers to stop and interrogate someone that they reasonably believe is suspected of criminal activity.
The police officers need not have probable cause to make such a stop, but only need reasonable suspicion. I believe given all the facts and circumstances that I've read in this report that there was reasonable suspicion here that a crime had been committed or was about to be committed which would allow these police officers to stop and frisk this defendant under Article 215.1 of the Code of Criminal Procedure and Terry versus Ohio. So, for the reasons that I've dictated into the record I deny the motion to suppress by Cory Duckett.
In brief to this court, defendant argues that the cocaine and marijuana were seized illegally, and should have been suppressed. He asserts that the seizure went beyond the scope of an investigatory stop. Alternatively, he contends that the officers effected an arrest without probable cause, and that the evidence should have been suppressed as the fruit of an unlawful search.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit *230 unreasonable searches and seizures. The right of law enforcement officers to stop and interrogate one reasonably suspected of criminal activity is, however, provided for by LSA-C.Cr.P. art. 215.1, as well as by state and federal jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Gresham, 97-1158 (La. App. 5 Cir. 4/15/98), 712 So.2d 946, 951, writ denied, 98-2259 (La.1/15/99), 736 So.2d 200. If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. State v. Benjamin, 97-3065 (La.12/1/98), 722 So.2d 988.
Reasonable suspicion for an investigatory stop is something less than probable cause, and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. A law enforcement officer must be able to point to specific and articulable facts to justify an investigatory stop, and those facts should be evaluated in light of the circumstances surrounding the incident. State v. Sanders, 97-892 (La.App. 5 Cir. 3/25/98), 717 So.2d 234, writ denied, 98-1163 (La.9/25/98), 724 So.2d 774. In considering those circumstances, a reviewing court should give deference to the inferences and deductions of a trained police officer "that might well elude an untrained person." State v. Huntley, 97-965 (La.3/13/98), 708 So.2d 1048, 1049, quoting United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981).
Defendant's motion to suppress the evidence was set for hearing in the trial court on August 17, 1998. On that day, the State and the defense agreed to submit the matter on the police report only, offering no testimony. The trial court denied the motion.
The police report in the instant case states that Sergeant Williams of the Jefferson Parish Sheriff's Office Narcotics Division received information about "individuals selling and smoking narcotics at the corner of Deanna St. & Betty St. Marrero, LA. This information is supported by recent undercover purchases, arrest, and numerous violent crimes in and about this area." When Williams and other officers arrived in the area of Betty and Deanna, they "observed several [black males] in the immediate area of complaint loitering. Investigators proceeded toward these individuals for further investigation." As the officers approached this group, they saw defendant "abruptly `turn' away from the investigators [and] flee toward [an] unknown residence near this location."
Flight from a police officer, by itself, does not provide sufficient justification for an investigatory stop. It is, however, considered highly suspicious, and may be one of the factors leading to a finding of reasonable suspicion. State v. Benjamin, 97-3065 at 722 So.2d at 989. In State v. Huntley, 97-965, 708 So.2d at 1050, the Louisiana Supreme Court noted that it has "accorded significant weight to evasive conduct in response to police presence in high crime areas." The reputation of a neighborhood as a high crime area is another articulable fact upon which an officer may legitimately rely in formulating reasonable suspicion for an investigatory stop. State v. Ayche, 98-191 (La.App. 5 Cir. 7/28/98), 717 So.2d 1218, 1222, writ denied, 98-2853 (La.2/26/99), 738 So.2d 1061; State v. Miskel, 95-584 (La.App. 5 Cir. 1/30/96), 668 So.2d 1299, 1302.
This court has found that presence in a high crime area, coupled with nervousness, startled behavior, flight or suspicious actions upon the approach of officers, is sufficient to justify an investigatory stop. State v. Barney, 97-777 (La.App. 5 Cir. 2/25/98), 708 So.2d 1205; State v. Ayche, supra. The fact that the officers in this case found defendant in a high crime area where there had been a specific report of *231 drug activity, along with defendant's flight upon the officers' approach, gave the officers a sufficient basis to stop defendant on suspicion of criminal activity.
Once the officers effected the stop, they were authorized under Article 215.1 A to demand of defendant his name, address, and an explanation of his actions. Under Article 215.1 B, the officers could frisk defendant's outer clothing for a dangerous weapon if they reasonably suspected they were in danger. State v. Gresham, supra; State v. Mitchell, 96-999 (La. App. 5 Cir. 3/25/97), 692 So.2d 1251. An officer's belief is not reasonable unless he can point to particular facts from which it might be reasonably inferred that the individual was armed and dangerous. State v. Gresham, supra. However, the officer need not establish that it was more probable than not that the detained individual was armed and dangerous; he need only show a "substantial possibility" of danger. Id. Unless an officer has probable cause to arrest a subject, searches of the person beyond the limited scope of Terry are invalid, even after a lawful investigatory stop. State v. Barney, supra.
The police report indicates that a "[p]at down search of Duckett [was] conducted for officer safety/weapons." A weapons pat down is justified under circumstances in which a reasonably prudent man would be warranted in a belief that his or another's safety was in danger. State v. Gresham, supra. The high crime character of the area, the nature of an anonymous tip, and the close association of weapons with narcotics trafficking are articulable circumstances which justified the weapons frisk.[2] According to the police report, no weapons were found on defendant's person. The report indicates that "Duckett [was] found to be in possession of one (1) clear plastic `sandwich bag' containing eight (8) sm. clear wrappers of white powder substance resembling cocaine. Also contained in `sandwich bag' were four (4) clear plastic `bags' containing green vegetable matter resembling marijuana."
Although we find the initial stop and the pat down for weapons were valid, we must now determine whether the officers were justified in seizing the plastic packets found pursuant to the frisk. In Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the United States Supreme Court established the "plain feel" doctrine, to apply to situations where an officer discovers contraband through the sense of touch during an otherwise lawful search. The Dickerson court analogized such a situation to a "plain view" discovery of contraband by police, where an officer who is lawfully in the position from which he views an object, and if its incriminating nature is immediately apparent, then the officer may seize it without a warrant.
The Dickerson court reasoned:
The rationale of the plain view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no "search" within the meaning of the Fourth Amendment-or at least no search independent of the initial intrusion that gave the officers their vantage point ... The same can be said of tactile discoveries of contraband. If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context. (Emphasis added; footnote omitted).
508 U.S. at 375, 113 S.Ct. at 2137.
In Dickerson, police officers stopped some individuals they saw leaving a crack *232 house. An officer frisked Dickerson for weapons, but found none. He did, however, feel a small lump in Dickerson's front jacket pocket, which he examined by manipulating it with his fingers. After concluding that the lump was a rock of crack cocaine, the officer reached into Dickerson's pocket and seized the object, which was indeed a rock of crack. The trial court upheld the search. The Minnesota Court of Appeals suppressed the seizure of the cocaine, finding that the search and seizure exceeded the bounds of Terry because the object's character, while known not to be a weapon, could not be discovered without further manipulation, rather than by "plain feel." The Minnesota Supreme Court and the United States Supreme Court affirmed.
In State v. Barney, supra, this court suppressed cocaine found in a matchbox during a weapons pat down. This court reasoned:
In the instant case, the officer did not feel drugs in defendant's pocket, but rather only felt a matchbox. A matchbox in and of itself is not contraband. The Dickerson opinion requires that the felt object feel like contraband. In order to determine if the matchbox held drugs, it was necessary for the officer to remove it from inside the defendant's pocket and open it. This is the type of further manipulation outlawed by Dickerson.

97-777, 708 So.2d at 1209.
In State v. Mitchell, supra, this court ruled that cocaine seized pursuant to a lawful pat down should be suppressed. In that case, as in Dickerson, an officer felt a rock-like substance while conducting a frisk for weapons. The officer testified that he knew when he felt the object that it was not a weapon, but that it might be contraband. It was not until the officer removed the object from the defendant's pocket that he was able to determine it was cocaine.
In the instant case, the officer who conducted the search did not testify. The police report states simply that, "(i)t should be noted that the packaging of all materials found are consistent with that for sales of cocaine and marijuana."
We believe the facts in the instant case are analogous to those in Dickerson, Barney and Mitchell. The officer felt a plastic bag, not drugs, during the pat down. In order for the officer to determine that the plastic bag contained drugs, he had to further manipulate it. Although we find that the investigatory stop and initial frisk were legal, the officers exceeded the permissible bounds of a Terry search. Therefore, the evidence was not admissible as a product of an investigatory search.
Accordingly, we reverse the trial court's denial of the motion to suppress and the defendant's conviction and sentence and remand the matter for further proceedings.
REVERSED AND REMANDED.
DUFRESNE, J., DISSENTS.
DUFRESNE, J., DISSENTING.
I would affirm the trial court's denial of the motion to suppress. Considering the circumstances in this case, the officers had probable cause for an arrest prior to searching the defendant. Thus, the evidence seized should not be suppressed.
NOTES
[1] Although count 2 was amended in writing on the face of the bill of information, count 1 was not.
[2] In State v. Huntley, 97-965, 708 So.2d at 1050, the Supreme Court recognized that for narcotics dealers, firearms are common "tools of the trade."