815 So.2d 351 (2002)
STATE of Louisiana
v.
Birdette SMITH-HOLMES.
No. 2001-KA-1810.
Court of Appeal of Louisiana, Fourth Circuit.
March 27, 2002.
*352 Harry F. Connick, District Attorney, Leslie Parker Tullier, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
William R. Campbell, Jr., Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge MIRIAM G. WALTZER, Judge PATRICIA RIVET MURRAY, Judge MICHAEL E. KIRBY).
MICHAEL E. KIRBY, Judge.

STATEMENT OF CASE
Defendant Birdette Smith-Holmes was charged with possession of cocaine in violation *353 of La. R.S. 40:967(c). Defendant pleaded not guilty at her February 23, 2001, arraignment. The court heard and denied her motion to suppress the evidence on March 30 2001.
On March 30, 2001, the defendant appeared and withdrew her former plea of not guilty and entered a plea of guilty under State v. Crosby, 338 So.2d 584 (La. 1976). The defendant was sentenced to two years with credit for time served. The defendant's sentence was suspended and she was placed on two years active probation. On the same date the defendant filed a motion to reconsider sentence, which was denied, and a motion for appeal, which the trial court granted.

STATEMENT OF FACT
On December 30, 2000 Officers Patrick Evans and Mark Amos participated in a surveillance at 1516 Laharpe Street. According to their testimony, this address is an old hotel that is used as an apartment complex. There are in excess of thirty rooms, in some of which the walls have been cut out or broken down so that one can access another apartment without actually exiting an apartment or going outside into the courtyard. There is an iron gate that controls access to the property.
For several months prior to December 30, 2000 the police had been maintaining surveillance on the location because of numerous hotline complaints of narcotics being sold at this location. Officer Amos testified that thirty-two arrests had been made for crack cocaine offenses "from this location." The surveillance revealed that the modus operandi of this operation was as follows: Someone on the inside of the iron gate acted as a gate keeper and when certain individuals approached, that person would open the gate to admit the suspect who would stay less than one minute and then exit. As of the date of the motion to suppress hearing the police had not been able to infiltrate the complex with an undercover operative and they did not know precisely which apartment(s) or room(s) were being used for illegal narcotics activity. Officer Amos specifically testified that during the operation that led to defendant's arrest almost everyone who entered the gate, stayed a short time and exited, was stopped for investigation of illegal narcotics activity. (There were a few who were not stopped due to a shortage of officers.) Not every stop resulted in an arrest because some of the suspects abandoned, destroyed or swallowed the evidence before the officers could seize it.
On the evening in question the officers observed the defendant exit a burgundy colored Nissan on the passenger side and walk up to the gate at 1516 Laharpe Street. She was admitted without knocking and stayed only a brief moment before exiting and returning to the vehicle she arrived in. Officer Evans radioed Officer Amos to stop the car in which defendant was riding.
As a result of that stop two pieces of crack cocaine were found in the pocket of her housecoat.

ERRORS PATENT
A review of the record revealed no errors patent.

DISCUSSION

ASSIGNMENT OF ERROR NUMBER 1
The defendant complains the trial court erred in denying her motion to suppress. Specifically, she argues that the police officers did not have reasonable suspicion to stop her. Therefore, the drugs were seized from her in violation of her rights, and should have been suppressed.
The trial court is vested with great discretion when ruling on a motion to suppress. *354 State v. Oliver, 99-1585 p. 4 (La. App. 4 Cir. 9/22/99), 752 So.2d 911, 914.
La.C.Cr.P. art. 215.1 provides in part:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and demand of him his name, address, and an explanation of his actions.
This court in State v. Anderson, 96-0810, p. 2 (La.App. 4 Cir. 5/21/97), 696 So.2d 105, 106, noted:
A police officer has the right to stop a person and investigate conduct when he has a reasonable suspicion that the person is, has been, or is about to be engaged in criminal conduct. Reasonable suspicion for an investigatory stop is something less than probable cause; and, it must be determined under the facts of each case whether the officer had sufficient articulable knowledge of particular facts and circumstances to justify an infringement upon an individual's right to be free from governmental interference. The totality of the circumstances must be considered in determining whether reasonable suspicion exists.
An investigative stop must be justified by some objective manifestation that the person stopped is or is about to be engaged in criminal activity or else there must be reasonable grounds to believe that the person is wanted for past criminal conduct.
(Citations omitted)
In reviewing the totality of the circumstances, the officer's past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Short, 96-1069 p. 4 (La.App. 4 Cir. 5/7/97), 694 So.2d 549, 552.
In State v. Finne, 92-2555 p. 3 (La.App. 4 Cir. 2/11/94), 632 So.2d 819, 821, this court stated: "Based on the totality of the circumstances, we find that the officers were justified in stopping defendant as they may have reasonably suspected that defendant had engaged in drug trafficking. Defendant was seen entering and leaving a residence, which had been reported to police as a drug outlet, and police officers had independently observed several individuals coming and going from the residence, including a known narcotics trafficker. We find under these circumstances the officers had reasonable suspicion of criminal activity to justify the investigatory stop."
The defendant cites State v. Sneed, 95-2326 (La.App. 4 Cir. 9/11/96), 680 So.2d 1237, in which this court found that the officers in that case did not have reasonable suspicion to stop the defendant simply because he was seen briefly visiting a residence under surveillance for drug activity. However, in the instant case, unlike Sneed, Officers Evans and Amos testified that there had been several citizen complaints of drug activity in the complex the defendant visited. More importantly, as of the time of defendant's arrest thirty-two others had been arrested for narcotics offenses after briefly visiting the same complex.
In the instant case, at approximately 10:00 p.m. the defendant was seen entering an apartment complex that had been under surveillance for drug activity for weeks. The defendant's actions, of briefly entering and exiting the complex, fit the pattern of others who had been found to have drugs or drug paraphernalia on them when stopped during the same surveillance period. Defendant in the instant case, like the defendant in Finne, id., was seen coming and going from a location the police knew to be a place of drug activity. Additionally, *355 the vehicle the defendant was seen getting into fit the description of the vehicle seen leaving a known drug area. Therefore, we find the totality of the circumstances gave the officers in this case reasonable suspicion to stop the defendant.
However, the inquiry does not end here. The record is unclear as to how the illegal drugs were actually discovered. On cross examination Officer Evans was asked:
Q. The vehicle was stopped, Ms. Smith-Holmes was ordered out of the vehicle and she was patted down?
A. I can't answer that. I wasn't there.
Officer Amos was apparently late for the hearing and had not appeared when officer Evans concluded his testimony. When the prosecutor asked the Judge to hold the case open in order to receive his testimony defense counsel stipulated "That he [Amos] patted her down and recovered narcotics." After some discussion and legal argument among counsel and the court, Officer Amos appeared and was permitted to testify. Nothing further was said about the stipulation.
Officer Amos testified on direct as follows:
A. During the course of my investigation we learned that Ms. Holmes Smith [sic] was in fact after a traffic stop ... in possession of crack cocaine, two pieces. She was wearing a housecoat and it was in the right front pocket, I believe.
On cross examination, he clarified his prior testimony by classifying the stop of the defendant's car as a "vehicle stop" as opposed to a "traffic stop." He was further questioned:
Q. Narcotics were recovered you said from Ms. Smith-Holmes right front pants pocket?
A. I believe it was like a housecoat. There is no other way to describe it really.
We find this to be a critical issue because under C.Cr.P. art. 215.1, while an officer with reasonable grounds to believe a person has committed a crime may stop him or her, the officer may not automatically search the suspect. C.Cr.P. art. 215.1(B) makes clear that before any type of search is conducted the officer must "reasonably suspect he is in danger." If he in fact does so suspect, then he may frisk the outer clothing of the suspect for a dangerous weapon and if that frisk leads him to reasonably suspect the person is in possession of a weapon, then the officer may search the person of the suspect. In the course of such a frisk or search if contraband is discovered it is discovered lawfully.
Here the record is devoid of any testimony or evidence that the officer was reasonably in fear of his safety. Absent such testimony or evidence any frisk or search of the defendant's person for weapons was impermissible under the plain language of C.Cr.P. art. 215.1(B). thus, the contraband seized pursuant thereto is the product of an illegal search and must be suppressed.
The state's reliance on State v. Wartberg, 91-1708 (La.App. 4 Cir. 9/12/91) 586 So.2d 627 for the proposition "That a reasonably cautious policeman was entitled to fear that a subject who is suspected of dealing drugs could be armed and dangerous, and that the officer was justified in searching for weapons" is misplaced. First, in that case the officers actually observed a hand to hand transaction that they believed was a drug deal. Here there was no such corresponding observation. Secondly, and more importantly in our view, the Wartberg court concluded that the officer had sufficient probable cause to effect an arrest of the defendant and that *356 the drugs were discovered pursuant to a search incident to a lawful arrest. Thus, the court's statements concerning the reasonableness of the officer's inferring the suspects would be armed and dangerous thereby justifying a search is mere dicta. We believe Wartberg should be limited to its facts, i.e., to those situations where the officer actually observes the alleged drug transaction.
The only other basis upon which the discovery of the contraband could be sustained would be if it were found during a search incident to a lawful arrest. However, we note that the state's brief does not address this issue, although it acknowledges that defendant argues both the lack of reasonable suspicion to stop and the lack of probable cause to arrest. We note also that neither officer testified he thought he had sufficient probable cause to arrest the defendant. In fact Officer Amos when asked by the prosecutor whether, based on his past knowledge of the activity at the apartment complex, he believed Ms. Smith-Holmes had engaged in a narcotics buy, he responded "it gave me reasonable suspicious to believe that she was possibly engaged in a narcotics transaction." This is a far cry from the probable cause needed to make a valid arrest. We must therefore conclude that the recovery of the contraband cannot be sustained as incidental to a lawful arrest.

CONCLUSION
For the above reasons the motion to suppress is granted, the defendant's conviction is reversed. Her sentence vacated, and the case remanded.
MOTION TO SUPPRESS GRANTED; CONVICTION REVERSED; SENTENCE VACATED AND REMANDED.