860 So.2d 51 (2003)
STATE of Louisiana
v.
Ricardo R. TOVAR.
No. 03-KA-513.
Court of Appeal of Louisiana, Fifth Circuit.
October 15, 2003.
*52 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Alan D. Alario, II, Assistant District Attorneys, Gretna, LA, for The State of Louisiana, Plaintiff-Appellee.
Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, LA, for Ricardo Tovar, Defendant-Appellant.
Panel composed of Judges MARION F. EDWARDS, CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
On January 25, 2002, the defendant, Ricardo Tovar, was charged in a bill of information with possession of marijuana with intent to distribute, in violation of LSA-R.S. *53 40:966(A).[1] He pled not guilty and filed several pretrial motions, including a motion to suppress the evidence. A hearing was held on the motion to suppress evidence on July 10 and 25, 2002, after which the trial court took the matter under advisement. On July 30, 2002, the trial court denied the motion to suppress. Thereafter, on September 23, 2002, the defendant withdrew his not guilty plea and entered a guilty plea, reserving his right to challenge the trial court's denial of his motion to suppress, pursuant to State v. Crosby, 338 So.2d 584 (La.1976). In accordance with a plea agreement, the defendant was sentenced to five years at hard labor. His sentence was suspended, and the defendant was placed on three years of active probation.

FACTS
On January 2, 2002, Agent Jeff Heggelund, with the Jefferson Parish Sheriff's Office, was contacted by Detective Scott Zemlik, with the Gretna Police Department, and advised that a reliable confidential informant stated there would be a delivery of marijuana by a white female residing at 521 Michael Street in Marerro to the Lapalco/Manhattan area. Agent Heggelund set up surveillance of the home which involved six agents.
During the surveillance, a Dodge sports utility vehicle was observed pulling up to the residence. A white male, later identified as the defendant, exited the vehicle and entered the home. Thereafter, a white female, subsequently identified as Sandraye Vedros, exited the residence and went next door to 525 Michael Street where she had a brief conversation with another white female, later identified as Lisa Kenney. Vedros returned to 521 Michael Street. Approximately two minutes later, Vedros again exited 521 Michael Street carrying a bulky brown purse. She went to 525 Michael Street and entered a small white vehicle driven by Kenney. The two drove away from the residence. The police followed the vehicle, believing one of the two women was the white female spoken about by the informant.
The police stopped the vehicle at the intersection of Manhattan and the Westbank Expressway. Vedros was asked to exit the vehicle at which time one of the officers noticed a bulky object in her waistband. When asked whether she had any weapons, Vedros started crying and stated she had marijuana in her pants. A bag containing approximately one pound of marijuana was removed from Vedros' pants. She was arrested and advised of her Miranda rights. Vedros subsequently stated she had additional marijuana in her purse.
Agent Heggelund arrived at the scene and met with Vedros. He advised her of her rights and completed a rights of arrestee form. She waived her rights and gave a recorded statement. In her statement, Vedros consented to a search of her residence at 521 Michael Street.
Agent Heggelund accompanied Vedros back to her residence, where the defendant and a small child were present. The home was searched with a canine unit. A bag with marijuana remnants, a scale, and a man's jacket containing $2,000 were found in the closet of the master bedroom and a scale was found in plain view. Inside the garage, a small amount of marijuana was found inside a tackle box and some packaging material used to transport marijuana was found in a cardboard box. According to Agent Heggelund, he advised the defendant of his rights, even though the defendant was not under arrest at that time. The defendant stated that he had lived in *54 the home for one week. He denied having access to the garage and denied any knowledge of what was going on in the garage but admitted the tackle box belonged to him. The defendant was subsequently arrested.

DISCUSSION
On appeal, the defendant argues the trial court erred in denying his motion to suppress the evidence. He asserts that the tip from the confidential informant was insufficient to justify a reasonable suspicion to conduct an investigatory stop, which ultimately led to the consent to search and seizure of the marijuana. The defendant contends that the tip was general, unparticularized and non-predictive. He maintains that the confidential informant's reliability was not established and that police corroboration was minimal. Thus, the defendant claims that the stop of the vehicle was illegal, and Vedros' consent to search after her illegal detention was invalid, and therefore, the evidence seized as a result of the illegality should have been suppressed.
At a hearing on a motion to suppress, the State bears the burden of proving the admissibility of evidence seized without a warrant. LSA-C.Cr.P. art. 703(D). A trial court is afforded great discretion when ruling on a motion to suppress, and its ruling will not be disturbed absent an abuse of that discretion. State v. Temple, 01-655 (La.App. 5 Cir.12/12/01), 806 So.2d 697, 705, writ denied, 02-0234 (La.1/31/03), 836 So.2d 58.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. State v. Duckett, 99-314 (La.App. 5 Cir.7/27/99), 740 So.2d 227, 230.
Law enforcement officers are authorized by LSA-C.Cr.P. art. 215.1, as well as state and federal jurisprudence, to conduct investigatory stops which allow officers to stop and interrogate a person reasonably suspected of criminal activity. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Gresham, 97-1158 (La.App. 5 Cir. 4/15/98), 712 So.2d 946, 951, writ denied, 98-2259 (La.1/15/99), 736 So.2d 200. Investigatory stops require reasonable suspicion of criminal activity. "Reasonable suspicion" is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual's right to be free from governmental interference. State v. Sanders, 97-892 (La.App. 5 Cir.3/25/98), 717 So.2d 234, 240, writ denied, 98-1163 (La.9/25/98), 724 So.2d 774.
Under certain circumstances, an informant's tip can provide reasonable suspicion to detain and question a person. State v. Rodriguez, 99-914 (La.App. 5 Cir. 1/25/00), 761 So.2d 14, 17, writ denied, 00-0599 (La.4/7/00), 759 So.2d 765. Generally, there must be some corroboration of the informant's tip and the tip must contain predictive information regarding the future behavior of the reported suspect. Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); State v. Robertson, 97-2960 (La.10/20/98), 721 So.2d 1268, 1270. The United States Supreme Court has applied a "totality of the circumstances approach" which considers an informant's veracity, reliability and basis of knowledge as highly relevant in determining the value of an informant's tip. Illinois v. Gates, 462 U.S. 213, 214, 103 *55 S.Ct. 2317, 2320, 76 L.Ed.2d 527 (1983); State v. Nelson, 02-65 (La.App. 5 Cir. 6/26/02), 822 So.2d 796, 801, writ denied, 02-2090 (La.2/21/03), 837 So.2d 627. "If the tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." Alabama v. White, 496 U.S. at 330, 110 S.Ct. at 2416; State v. Morgan, 00-1501 (La.App. 5 Cir.3/28/01), 783 So.2d 514, 519.
At the motion to suppress hearing in the present case, the State presented only the testimony of Agent Jeff Heggelund. Agent Heggelund testified that he was advised by a Gretna police officer, Detective Scott Zemlik, that the officer received information from a confidential informant that a white female residing at 521 Michael Street would be making a delivery of marijuana to the area of Lapalco and Manhattan Boulevard. Agent Heggelund learned that the female would have to arrange for a ride, but the informant did not provide any type of physical description of the white female, and the type of vehicle to be involved in the delivery was unknown. Additionally, Agent Heggelund had no information regarding how the marijuana was to be packaged or transported, and he was unaware of the time that the delivery was supposed to take place.
Agent Heggelund testified that he asked Detective Zemlik about the reliability of the confidential informant and concluded, based on Detective Zemlik's responses, that the informant was a reliable source. Agent Heggelund could not recall the specific questions he asked or Detective Zemlik's specific responses but he understood that the informant had provided information in the past that had led to an arrest and conviction. Agent Heggelund also understood that the informant was not being paid but was working for Detective Zemlik "for consideration for other charges."
Based on the information he received, Agent Heggelund set up surveillance of 521 Michael Street. During the surveillance, the police observed a Cadillac with a black male and a white male arrive at the residence. The driver entered the residence and then departed a few minutes later in the Cadillac. The driver was not observed to be carrying any type of package. Thereafter, a Hispanic female, Vedros, was seen exiting the residence. On her first exit, Vedros was not carrying anything. She went to the neighboring house and then returned to 521 Michael Street. On Vedros' second exit from 521 Michael Street, she was carrying a bulky brown purse. According to Agent Heggelund, Vedros secured a ride from her neighbor and started traveling toward the Lapalco/Manhattan area. Agent Heggelund testified that he was not told of the route the vehicle would take to the delivery destination. The vehicle in which Vedros was riding was stopped at the intersection of Manhattan and the Westbank Expressway. Agent Heggelund stated that the vehicle committed no traffic violations prior to the stop.
The issue before the Court is whether the tip from the confidential informant together with the observations of the police constituted reasonable suspicion to stop the vehicle in which Vedros was riding.
In a similar case, State v. Rodriguez, supra at 19, this Court determined that the information received from a confidential informant was insufficient to establish reasonable suspicion to stop the vehicle in which the defendant was riding. In Rodriguez, the police received information from Agent Garza of the U.S. Drug Enforcement Administration (DEA) that the agent had received information from a reliable confidential informant that a specific *56 residence was involved in distribution and storage of heroin. The DEA agent learned that a large quantity of heroin was to be delivered by one of the residents of the address. The police set up surveillance of the address and observed two individuals, including the defendant, exit the apartment. The police stated that the individuals entered a vehicle and left the premises, but did not act suspiciously. The police checked the registration of the vehicle and learned it was registered to a person at the address specified by the informant. The police subsequently stopped the vehicle. The vehicle had not committed any traffic violations and did not exhibit any suspicious activity before it was stopped. Upon being stopped, the driver fled on foot and the defendant, who was a passenger, threw a black plastic bag, which contained a brown powder that later tested positive for heroin, out of the window. The defendant was arrested and a search warrant was obtained for the apartment. Heroin was found in the refrigerator and paperwork in the defendant's name was found in the apartment.
This Court found the informant's tip to be "painfully lacking in specificity" and "sparse at best." Id. at 18. The Court stated that the tip did not provide a range of specific details that could be corroborated by the officers and amounted to little more than an address. Id. It was further noted that no information was provided to establish the veracity, reliability or basis of knowledge of the informant and the officer did not know when the informant's tip was received. Further, the informant's tip "did not describe a particular person, by name or description, a particular vehicle, by make, color or license number, or a particular place where the vehicle would go." Id.
This Court concluded that the State did not meet its burden of proof because there was no showing made of the reliability of the informant and the limited specificity of the information in the tip was insufficient to provide reasonable suspicion to justify the initial stop of the vehicle. Id. at 19. The Court noted that the police were not powerless to act on the non-predictive information that they received, because the officers could have set up more extensive surveillance of the apartment and the people who exited it until they observed suspicious or unusual behavior. Id. at 19-20.
Similar to the police in Rodriguez, Agent Heggelund did not know when the tip was received or what time the predicted delivery was to take place. Furthermore, just like the informant in Rodriguez, the informant in the present case did not describe the person involved in the delivery, other than to say she was a white female. Although the informant specified the female would have to arrange a ride, no information was given regarding from whom the ride was to be obtained or the type of vehicle that would be involved in the delivery.
As stated above, there generally must be some corroboration of the informant's tip and the tip must contain predictive information regarding the future behavior of the reported suspect. Alabama v. White, supra; State v. Robertson, supra at 1270. In the present case, the predictive information provided by the informant was minimal. Although the police corroborated the fact that there was a white female at 521 Michael and that she would arrange for a ride, there was no corroboration of the informant's tip that the vehicle would go to the area of Lapalco/Manhattan, because the vehicle was stopped prior to reaching the area.
Although an informant's tip can provide reasonable suspicion to detain and question a person under certain circumstances, *57 we find that the informant's tip in this case was not specific and predictive enough to provide reasonable suspicion for an investigatory stop. Accordingly, we find that the stop of the vehicle in which Vedros was riding was illegal and her subsequent arrest was illegal. The issue then becomes whether the illegality of the arrest so tainted Vedros' consent as to require the suppression of the evidence seized in the search of the residence pursuant to that consent.
A voluntary consent to search made after an illegal arrest is only valid when the circumstances show no exploitation of the illegality. State v. Zielman, 384 So.2d 359, 363 (La.1980). Factors to consider in determining whether the consent was a result of the exploitation of the illegal arrest are: 1) whether the governmental officers adequately informed the accused that she did not need to comply with their request, 2) the temporal proximity between the arrest and the consent, 3) the presence of intervening circumstances, and 4) the purpose and flagrancy of the official misconduct. State v. Mitchell, 360 So.2d 189, 191 (La.1978), citing Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).
In the present case, Vedros' consent appears inextricably linked to the initial illegal arrest. She gave her consent to search at the scene of the arrest shortly after the arrest occurred. There were no intervening circumstances between the arrest and the consent. Additionally, there is nothing in the record to suggest Vedros was advised of her right to refuse consent. Accordingly, we find that Vedros' consent to search was an exploitation of her illegal arrest. As such, the evidence seized from the residence was the fruit of the illegal stop and tainted consent, and it should have been suppressed. Therefore, we reverse the denial of the defendant's motion to suppress, and set aside the defendant's conviction and sentence. The case is remanded for further proceedings.
As requested by the defendant, the record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990). No errors patent were found.

DECREE
For the reasons set forth above, the trial court ruling denying the defendant's motion to suppress is reversed. We hereby vacate and set aside the defendant's conviction and sentence, and we remand the matter for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] Co-defendant, Sandraye Vedros, was also charged in the bill of information.