874 So.2d 272 (2004)
STATE of Louisiana
v.
Juaquin R. MARTINEZ.
No. 04-KA-38.
Court of Appeal of Louisiana, Fifth Circuit.
April 27, 2004.
*274 Paul D. Connick, Jr., District Attorney, 24th Judicial District Court, Terry M. Boudreaux, Juliet Clark, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Holli A. Herrle-Castillo, Harvey, LA, for Defendant/Appellant.
Panel composed of Judges MARION F. EDWARDS, CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
CLARENCE E. McMANUS, Judge.

STATEMENT OF THE CASE
On May 7, 2003, the Jefferson Parish District Attorney filed a bill of information charging the defendant, Juaquin R. Martinez, with possession of cocaine in violation of LSA-R.S. 40:967(C). The defendant was arraigned on May 16, 2003 and pled not guilty. On October 20, 2003, the defendant's motion to suppress evidence was denied. On that same date, the defendant withdrew his plea of not guilty and tendered a plea of guilty under State v. Crosby, 338 So.2d 584 (La.1976). The trial court subsequently sentenced the defendant to imprisonment at hard labor for two years, suspended the sentence, and placed the defendant on active probation for two years. On October 24, 2003, the defendant filed a motion for appeal that was granted.

FACTS
The following facts and testimonies were presented at the hearing on the motion to suppress. Detective Daniel Jewell was the arresting officer. He testified that he had been employed by the Jefferson Parish Sheriff's Office narcotics division for approximately two years and that, during his four years with the New Orleans Police Department, he had made hundreds of drug arrests.
In regards to this case, Detective Jewell testified that his office had received an anonymous complaint regarding numerous people coming and going from 4120 Trenton Street Apartment No. 3 in Metairie, Louisiana. Based on this information, Detective Jewell and his partner conducted surveillance on the apartment on April 1, 2003. During the 45 minute surveillance, *275 Detective Jewell observed five subjects going to the apartment and staying approximately two to five minutes. He explained that this behavior was consistent with the purchase of narcotics.
Detective Jewell then testified that the defendant, Juaquin R. Martinez, was the sixth person to approach the apartment. After the defendant left the apartment, Detective Jewell's partner stayed and continued the surveillance and Detective Jewell followed the defendant who walked about three blocks away to Independence Street. Detective Jewell stated that he never lost sight of the defendant, nor did the defendant approach any other residences.
Detective Jewell then stopped the defendant and identified himself as a police officer. Detective Jewell thought the defendant had possibly purchased narcotics from someone in the apartment. The detective questioned the defendant about his ID, what he was doing in the apartment, and whether he knew the people there. The defendant could not give him a good answer and kept looking around. Detective Jewell thought the defendant was about to flee.
Detective Jewell testified that the defendant kept sticking his hands in his pockets and his waistband after being told numerous times not to. He also testified that the defendant "could not hold an object in his hand without dropping it." When the detective asked the defendant to produce his identification, Detective Jewell noticed that the defendant was very nervous and sweating profusely, even though it was rather cool.
Based on the defendant's attitude and the way he carried himself and knowing from experience that narcotics and weapons went "hand-in-hand", Detective Jewell conducted a pat down for weapons because he was concerned for his safety. Detective Jewell heard a "distinctive crunch of plastic", which he associated with being a cigarette wrapper, when he got to the lower, right part of the defendant's leg around the sock and ankle area. When Detective Jewell touched the wrapper, the defendant bent down and moved the detective's hand away from his ankle. Detective Jewell testified that every time he went near the defendant's ankle, the defendant would move his hands near the ankle. Because of these actions, Detective Jewell was concerned for his safety.
Once he was able to actually pat the area around the ankle, Detective Jewell felt a small, rock-like object. He testified that he did not have to manipulate the object to feel it and it was "very distinctive" and he "immediately recognized it." Detective Jewell then lifted the defendant's pant leg and saw the top of the plastic sticking out of his sock. Detective Jewell then seized a small piece of crack cocaine and the defendant was placed under arrest.
On cross-examination, Detective Jewell admitted that he did not see any hand-to-hand transactions or drugs change hands during his 45 minutes of surveillance and he did not stop the other five people who left the apartment.
The trial court denied the defendant's motion to suppress the evidence finding that the detective had a reasonable suspicion to stop and talk to the defendant and that under the totality of the circumstances, the detective was entitled to conduct the pat-down because he reasonably suspected he was in danger. The defendant now appeals the trial court's denial of the motion to suppress.

ASSIGNMENT OF ERROR NUMBER ONE
The defendant argues that the trial court erred in denying the motion to suppress *276 the evidence. He contends the officer had no reasonable suspicion to stop him after he left the apartment. He also argues that, even if the officer had reasonable suspicion to stop him, the officer was not justified in patting him down. Further, he asserts that even if the stop and pat-down for weapons were legal, the retrieval of the cellophane wrapper containing the crack rock was not.
The Fourth Amendment to the United States Constitution and La. Const. Art. 1, § 5 protect individuals from unreasonable searches and seizures. State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). However, the right of law enforcement officers to stop and question a person where there is reasonable suspicion to believe that the person is committing, has committed or is about to commit a crime was established in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). See also: State v. Keller, 403 So.2d 693, 696 (La.1981); State v. Duran, 96-602 (La.App. 5 Cir. 3/25/97), 693 So.2d 2, 3, application dismissed, 97-1485 (La.1/9/98), 705 So.2d 1087.
The requirements for a valid Terry stop and for any search incident to the stop was codified in LSA-C.Cr.P. art. 215.1, which provides in pertinent part:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
C. If the law enforcement officer finds a dangerous weapon, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person.
Investigatory stops require reasonable suspicion of criminal activity. "Reasonable suspicion" is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual's right to be free from governmental interference. State v. Sanders, 97-892 (La.App. 5 Cir. 3/25/98), 717 So.2d 234, writ denied, 98-1163 (La.9/25/98), 724 So.2d 774.
The facts upon which an officer bases an investigatory stop should be evaluated in light of the circumstances surrounding the incident. A reviewing court must take into consideration the totality of the circumstances and give deference to the inferences and deductions of a trained police officer that might elude an untrained person. State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048.
An officer's experience, his knowledge of recent criminal patterns and his knowledge of an area's frequent incidence of crimes, are factors that may support reasonable suspicion for an investigatory stop. State v. Martin, 99-123 (La.App. 5 Cir. 6/1/99), 738 So.2d 98. Although flight, nervousness, or a startled look at the sight of a police officer is, by itself, insufficient to justify an investigatory stop, this type of conduct may be highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable cause. State v. Belton, 441 So.2d *277 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
Furthermore, an anonymous tip corroborated by police surveillance can, under some circumstances, supply enough reliability to support an investigatory stop. Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); State v. Morgan, 00-1501 (La.App. 5 Cir. 3/28/01), 783 So.2d 514.
In State v. Jernigan, 377 So.2d 1222, 1225 (La.1979), cert. denied, 446 U.S. 958, 100 S.Ct. 2930, 64 L.Ed.2d 816 (1980), the Louisiana Supreme Court held, "[A]n anonymous tip can provide the basis of an investigatory stop. However, the information received from the anonymous tipster must carry enough indicia of reliability, such as specificity of the information and corroboration by independent police work, to justify the stop."
When a police officer observes conduct which leads him to reasonably conclude that criminal activity may be afoot and that the persons with whom he is dealing may be armed and dangerous, he is entitled to conduct a carefully limited search to discover weapons that might be used to assault him, in the course of the investigatory stop. Terry v. Ohio, 88 S.Ct. at 1884-1885; State v. Tolliver, 556 So.2d 166, 169 (La.App. 5 Cir.1990). The pat-down is justified under circumstances where a reasonably prudent man would be warranted in the belief that his safety or that of others was in danger. State v. Keller, 403 So.2d 693, 697 (La.1981); State v. Edwards, 630 So.2d 302, 304 (La.App. 5 Cir.1993). See also: State v. Mitchell, 96-999 (La.App. 5 Cir. 3/25/97), 692 So.2d 1251, 1252.
If, in the course of a frisk pursuant to LSA-C.Cr.P. art. 215.1(B), an officer feels an object whose contour or mass makes its identity as contraband immediately apparent, the officer may seize it under the "plain feel" exception to the warrant requirement. Minnesota v. Dickerson, 508 U.S. 366, 377, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334, (1993); State v. Broussard, 00-3230 (La.5/24/02), 816 So.2d 1284.
In the instant case, the first issue we must address is whether the officer had reasonable suspicion to conduct the investigatory stop. The facts of this case are very similar to a case recently decided by this Court, State v. Washington, 03-1134, pp. 1-5 (La.App. 5 Cir. 2/10/04), 866 So.2d 1058. In State v. Washington, this Court held that there was no reasonable suspicion for the officers to conduct the investigatory stop. In Washington, narcotics detectives testified that they were members of a "take down unit" conducting surveillance at a specific address. Other officers witnessed narcotics transactions from the residence and were in the process of obtaining a search warrant for the residence. During the surveillance, an officer observed a truck approach the front of the residence. Defendant, a passenger, exited the truck, entered the residence briefly, and returned to the truck. The truck was subsequently stopped, and defendant exited the vehicle. As he did so, two pieces of wrapped aluminum foil, which the officer recognized as the packaging for heroin, fell to the ground.
In Washington, this Court found that the state did not present evidence to show that the officers had information sufficient to give them reasonable suspicion to stop the truck. Neither officer testified that defendant acted suspiciously or unusually, and defendant's entering a residence and exiting to a waiting vehicle, standing alone, was not enough to provide officers with reasonable suspicion to stop defendant. This Court distinguished this case from State v. Fontaine, 01-1291 (La. App. 4 Cir. *278 3/6/02) 814 So.2d 592 and State v. Smith-Holmes, 01-1810 (La. App. 4 Cir. 3/27/02), 815 So.2d 351, noting that, in those cases, the defendants' actions of briefly entering and exiting the residence under surveillance fit the actions of others who had been found to have drugs or drug paraphernalia on them.
In addition, in State v. Rodriguez, 99-914 (La.App. 5 Cir. 1/25/00), 761 So.2d 14, 15-20, writ denied, 00-0599 (La.4/7/00), 759 So.2d 765, this Court found that the officers did not have reasonable suspicion to stop the vehicle in which defendant was riding. In Rodriguez, a federal agent received information from a reliable confidential informant that a specific apartment was involved in the distribution and storage of heroin. The agent also learned that, on a specific date, a large quantity of heroin was to be delivered by one of the residents. The agent provided the information to a detective who set up surveillance.
Approximately one hour after the surveillance began, the detective saw two individuals exit the apartment and enter a vehicle located in the parking lot. The officers followed the vehicle, but did not observe any suspicious activity, and ultimately stopped the vehicle. The detective subsequently observed the defendant, the passenger, throw a plastic bag on the ground, which later tested positive for heroin.
This Court found that the state did not meet its burden of proving the validity of the warrantless vehicle seizure, noting that the information was so sparse that it was impossible to determine the veracity, basis of knowledge and reliability of the informant and the information given, and that the predictive aspect of the information was so vague that it did not rise to the level of reasonable suspicion. As such, this Court reversed the trial court's denial of the motion to suppress and remanded for further proceedings.
In the instant case, we find that the officer did not have reasonable suspicion to conduct the investigatory stop. There was no evidence that Detective Jewell witnessed defendant engage in any criminal activity. Detective Jewell did not see any hand-to-hand transactions, nor did he see any drugs change hands. No one prior to defendant was stopped and found to have drugs or drug paraphernalia on them. Prior arrests for drug offenses had not been made in connection with that location. The police had no prior suspicion of the residence, and there was no evidence that the location of the encounter was in a high drug trafficking area. None of the five subjects who entered and exited the apartment before defendant were known to the police as being narcotics traffickers. In addition, the predictive aspect of the tip was vague. Although the residence was suspected as being used for narcotics transactions, we find that, defendant's presence there, without more, was as equally consistent with innocent behavior as with criminal conduct.
We find there was no reasonable suspicion to conduct the investigatory stop. Since the evidence, the rocks of crack cocaine, were obtained as a result of this illegal stop, the trial court erred in denying the motion to suppress. As a result, we reverse the trial court's judgment and grant the defendant's motion to suppress the evidence.
Since we have found that the officer had no reasonable suspicion to conduct the stop and we reverse the trial court's judgment on this basis, we will not address whether the pat-down and seizure of the cocaine was legal.

ERROR PATENT REVIEW
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; *279 State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Wetland, 556 So.2d 175 (La.App. 5 Cir.1990). The review reveals no errors patent that require corrective action.
Accordingly, we reverse the denial of the motion to suppress the evidence and the defendant's conviction and sentence are hereby vacated.
REVERSED; CONVICTION AND SENTENCE VACATED.